MICHAEL C. ROSSELL, Plaintiff-Appellee, *v.* CITY AND COUNTY OF HONOLULU, Defendant-Appellant

and

MICHAEL C. ROSSELL, Plaintiff-Appellee, *v.* OFFICER GREGORY L. CHURCH, OFFICER WILLIAM PERREIRA, and DR. EDWIN ADAMS, Defendants-Appellants

NO. 6160

MAY 10, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

174

OPINION OF THE COURT BY OGATA, J.

This appeal raises questions concerning Hawaii's "implied consent" statute, HRS Chapter 286, Part VII (1976 Repl.). On November 28, 1975, judgment was entered in favor of plaintiff-appellee Michael C. Rossell (hereinafter appellee) for damages stemming from, *inter alia,* the failure of defendants-appellants (hereinafter appellants) to comply with a provision of the implied consent statute.

Appellants primarily contest the trial court's determinations regarding certain jury instructions relating to the administration of blood alcohol tests upon a suspected drunken driver. We are of the opinion that the trial court's decisions were not erroneous, and we consequently affirm the judgment entered by the court below.

During the late evening hours of March 25, 1972, appellee was stopped and placed under arrest by appellant Police Officer Gregory L. Church for driving while under the influence of alcohol. Appellee was advised of his *Miranda* rights and was transported to the Honolulu Police Station (Pawaa Annex). At the station, the various provisions of the implied consent statute were explained to appellee. Pursuant to HRS § 286-151 (1976 Repl.), appellee was informed of the possibility of revocation of his driver's license if he refused to submit to either a breath or blood test for purposes of determining the alcoholic content of his blood. Appellee was then asked to sign a sobriety test consent form.

The remainder of the events which transpired at the police station are in considerable dispute. Appellant Church testified that although appellee refused to sign the sobriety test consent form, he finally elected to take the blood test. Appellee was then taken to the emergency medical facility in the police station, where appellant Dr. Edwin Adams was stationed. Upon arriving at the medical facility, appellee immediately questioned appellant Adams' identity and qualifications as a medical doctor. Adams testified that he showed appellee a wallet-sized card which identified him as a physician licensed to practice medicine in this State.

Appellee, on the other hand, testified that he never agreed

to submit to any breath or blood test but had only asked for more information regarding what those tests involved. He stated that as he was being escorted to the medical facility, he was under the impression that he was being taken there for purposes of consulting with someone who could provide him with more information about the tests. Appellee further testified that he was unable to clearly view the information on the identification card presented by Dr. Adams and was unconvinced as to Adams' medical qualifications.

Appellant Church testified that after viewing Adams' identification card, appellee began to yell and scream and would not remain seated in his chair. Appellant Police Officer William Perreira, who was present with appellee and appellant Church in the medical facility, also testified that appellee became unruly and "was very loud." According to Perreira, appellee continued to be "loud" and disorderly and eventually knocked over a tray containing some medical instruments. Appellee then allegedly pushed Perreira, at which time Perreira applied a "choke hold" on appellee and rendered him unconscious.

According to appellee, however, the overall attitude and demeanor of Adams and the two officers led him to believe that he was being rushed into submitting to a blood test. He thus began to talk in an excited manner while moving his hands about in order to indicate that he did not want to take any test at all. He denied having yelled or having acted in any other manner to "cause a commotion". He stated that one of the policemen simply put his arms around his neck and choked him into unconsciousness. When he regained consciousness, he was laying on his back on the floor and there was a Band-Aid on his arm near the right elbow.

According to appellants Adams, Church and Perreira, shortly after Perreira applied the choke hold on appellee, Dr. Adams withdrew a blood sample from appellee's arm for purposes of conducting a blood-alcohol test. However, appellants stated that appellee had in fact regained consciousness and was seated passively at the time that the blood sample was taken by Dr. Adams.

Appellee also complained of a subsequent incident in

which he was choked unconscious at the receiving desk area of the police station by an unknown police officer. When he regained consciousness after this incident, he was allegedly stripped of all his clothing by the police officers and was dragged by his feet to a nearby holding cell.[1] He was later released and was treated by private physicians for head and neck pains.

On June 27, 1972, appellee was convicted in district court of the offense of driving under the influence of intoxicating liquor.[2] At that trial, the district court denied appellee's motion to suppress the results of the blood test which had been administered at the police station.[3]

Appellee filed the instant civil complaints, which were consolidated in 1974, against appellants for injuries sustained as a result of the incidents which took place on March 25, 1972, at the police station.[4] After a three-day trial held in November, 1975, the jury returned a verdict of $15,000 in general damages and $123.76 in special damages (the stipulated amount of appellee's medical expenses) against appellant City and County of Honolulu, $10,000 in punitive damages against appellant Adams, $3,000 in punitive damages against appellant Perreira, and $2,000 in punitive damages against appellant Church. Judgment was duly entered pursuant to this verdict.

I.

Appellants allege several grounds of error. Their underlying contention is that they were lawfully entitled under the

---

[1] Although this incident possibly formed a basis for a portion of the jury's verdict, it is not at issue in this appeal.

[2] See HRS § 291-4 (1976 Repl.).

[3] The blood test revealed an alcohol content of .24 mg per 100 cc of blood.

[4] Appellant City and County of Honolulu, which employed appellants Church, Perreira, and Adams, was included as a party defendant under the doctrine of respondeat superior.

circumstances of this case to administer the blood test to appellee for purposes of determining the alcoholic content of his blood. Appellants thus maintain that the trial court's refusal to give instructions to that effect to the jury constituted reversible error.

Appellants first argue that the trial court erred in refusing to give Defendants' Instructions No. 5 and No. 6 to the jury. Defendants' Instruction No. 5 would have told the jury that the withdrawal of a blood sample from an individual at the direction of a police officer, despite the individual's refusal to consent to the blood test, violates neither the individual's rights to due process of law and to counsel nor his privileges against self-incrimination and against unreasonable searches and seizures.[5] Defendants' Instruction No. 6 would have told the jury that an attempt by a police officer, subsequent to making an arrest for driving while under the influence of alcohol, to secure evidence of blood-alcohol content without a search warrant and notwithstanding the protest of the individual arrested is a lawful incident to arrest.[6] We hold that both of these proffered instructions were properly refused by the trial court.

Appellants assert that although HRS § 286-155 (1976 Repl.) provides that "[i]f a person under arrest refuses to submit to a test of his breath or blood, *none shall be given*",[7]

---

[5] Defendants' Instruction No. 5 reads as follows:

You are instructed that the withdrawal of a blood sample from an individual by a physician at the direction of a police officer, despite the Defendant's refusal, even on the advice of counsel, to consent to the blood test, does not violate that person's right to due process of law under the Fourteenth Amendment of the United States Constitution, nor does it violate said person's privilege against self-incrimination under the Fifth Amendment, his right to counsel under the Sixth Amendment, and his right against unreasonable searches and seizures under the Fourth Amendment.

[6] Defendants' Instruction No. 6 reads as follows:

You are instructed that where a police officer has probable cause to arrest an individual and charge him with driving an automobile while under the influence of intoxicating liquor, the attempt by the officer to secure evidence of blood-alcohol content, without securing a warrant, and notwithstanding the protest of the individual arrested, is an appropriate incident to the arrest.

[7] Emphasis added.

*Schmerber v. California,* 384 U.S. 757 (1966), nevertheless permits the police to forcibly take a blood sample from an individual arrested for driving under the influence of intoxicating liquor despite the individual's refusal to give his consent. In *Schmerber,* a blood sample was withdrawn from a person suspected of driving while intoxicated despite the individual's refusal to consent to the test. The Supreme Court held that such a withdrawal of blood, notwithstanding the arrestee's protests, was permissible and did not violate the arrestee's Constitutional rights to due process of law and to counsel and privileges against self-incrimination and against unreasonable searches and seizures. Appellants contend, therefore, that notwithstanding the provisions of HRS § 286-155 (1976 Repl.), *Schmerber* permits the police to take a blood sample from a person lawfully arrested for driving while intoxicated despite his refusal to submit to the blood test.

It is clear, however, that *Schmerber* was never intended to override the provisions of any state's implied consent statute. The United States Supreme Court has long approved of the concept behind implied consent statutes. Describing such statutes as "part of a sensible and civilized system" of protecting the driver as well as other citizens, the Supreme Court has specifically commented with favor on statutes closely paralleling HRS Chapter 286, Part VII (1976 Repl.). *Breithaupt v. Abram,* 352 U.S. 432, 435 n. 2 (1957). Furthermore, the result reached in *Schmerber* is tempered by the fact that the Court in that case was never confronted with an implied consent statute, for no such statute was in effect in California at the time that the case was decided.[8] Moreover, although *Schmerber* holds that there is no Constitutional impediment to the forcible taking of blood from an arrestee despite his refusal, nowhere in *Schmerber* is it stated that the Court thereby intended to prevent the states from legisla-

---

[8] The California implied consent statute, Vehicle Code §13353, was enacted some three-and-a-half months after *Schmerber* was handed down. *See* Karabian, *California's Implied Consent Statute: An Examination and Evaluation,* 1 Loy.L.Rev. 23 (1968).

tively providing narrower guidelines for law enforcement authorities in the administration of sobriety tests upon suspected drunken drivers.

The Constitutional validity of implied consent statutes is unquestioned. *State v. Severino,* 56 Haw. 378, 380, 537 P.2d 1187, 1189 (1975).[9] Today, all fifty states have enacted implied consent laws, and although the details vary from state to state, the basic pattern of this type of legislation is quite similar throughout the country. R. REEDER, INTERPRETATION OF IMPLIED CONSENT LAWS BY THE COURTS 1 (1972). Under most implied consent statutes, including Hawaii's, any person who operates a motor vehicle upon a public highway is deemed to have given his consent to chemical tests of his breath or blood, or both, for purposes of determining the alcoholic content of his blood. HRS § 286-151 (1976 Repl.);[10] R. REEDER, *supra,* at 1. An additional common feature of such statutes is that if the arrested person refuses to submit to the chemical tests when requested by a law enforcement officer, no test is to be administered. HRS § 286-155 (1976 Repl.); R. REEDER, *supra,* at 1. However, upon refusal, the arrested driver then faces revocation of his

---

[9] For a further discussion of cases upholding the validity of implied consent statutes on constitutional grounds, see R. REEDER, INTERPRETATION OF IMPLIED CONSENT LAWS BY THE COURTS 2-19 (1972).

[10] The 1967 version of HRS § 286-151, which was in effect at the time of the trial below, provided:

*Implied consent of driver of motor vehicle to submit to testing to determine alcoholic content of blood.* Any person who operates a motor vehicle upon the public highways of the State shall be deemed to have given his consent, subject to this part, to a test approved by the highway safety coordinator of his breath or blood for the purpose of determining the alcoholic content of his blood; such person shall have the option to take a test of his breath or blood, or both. The test or tests shall be administered at the request of a police officer having reasonable grounds to believe the person driving or in actual physical control of a motor vehicle upon the public highways is under the influence of intoxicating liquor only after (1) a lawful arrest, and (2) the police officer has informed the person of the sanctions of section 286-155.

(The term "highway safety coordinator" has been changed to "director of transportation." *See* § 12, c. 20, S.L.H. 1977.)

driver's license. HRS § 286-155 (1976 Repl.) (revocation is for a period of six months);[11] R. REEDER, *supra*, at 1.

Our Legislature enacted the implied consent statute as one means of decreasing fatalities, injuries, damages and losses resulting from highway traffic accidents. § 1, c. 214, S.L.H. 1967. The implied consent statute represents "an additional or alternative method of compelling a person arrested for drunken driving to submit to a test for intoxication, by providing that such person will lose his automobile driver's license for a period of six months if he refuses to submit to a test for intoxication." *People v. Superior Court*, 6 Cal.3d 757, 765, 493 P.2d 1145, 1150, 100 Cal.Rptr. 281, 286 (1972) (in bank).

Although *Schmerber* holds that there is no *Constitutional* impediment to the forcible removal by the state of a blood sample from an arrestee who refuses to consent, provided that the taking is done in a reasonable, medically approved manner, "such an episode remains an unpleasant, undignified and undesirable one." *People v. Superior Court*, 6 Cal.3d at 764, 493 P.2d at 1150, 100 Cal.Rptr. at 286. Thus, a state is free to seek alternative means to avoid violent police-citizen confrontations, and can "decide to use the threat of revocation [of a driver's license] to encourage submission to

---

[11] HRS § 286-155 (1976 Repl.) provides in pertinent part as follows:

*Revocation of privilege to drive motor vehicle upon refusal to submit to testing.* If a person under arrest refuses to submit to a test of his breath or blood, none shall be given, but the arresting officer shall, as soon as practicable, submit an affidavit to a district judge of the circuit in which the arrest was made, stating:

    (1) That at the time of the arrest, he had reasonable grounds to believe the arrested person had either been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor;

    (2) That the arrested person had been informed of the sanctions of this section; and

    (3) That the person had refused to submit to a test of his breath or blood.

Upon receipt of the affidavit, the district judge shall hold a hearing as provided in section 286-156, and shall determine whether the statements contained in the affidavit are true and correct. If the district judge finds the statements contained in the affidavit are true, he shall revoke the arrested person's license, permit, or any nonresident operating privilege for a period of six months.

the search as an *alternative* to the use of force." Comment, *The Theory and Practice of Implied Consent in Colorado,* 47 Colo.L.Rev. 723, 762 (1976). It cannot be overstated that the effect of implied consent legislation "is to equip peace officers with an instrument of enforcement *not involving physical compulsion." People v. Superior Court,* 6 Cal.3d at 765, 493 P.2d at 1150, 100 Cal.Rptr. at 286 (emphasis added).

HRS § 286-155 (1976 Repl.) constitutes a valid element of Hawaii's statutory scheme of encouraging submission to chemical sobriety testing without resort to physical force on the part of the police. In order to fulfill this statutory scheme, it is essential that the police refrain from imposing the chemical tests when the arrested driver refuses to submit to such tests.

> The obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is "deemed to have given his consent" is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates.

*Bush v. Bright,* 264 Cal.App.2d 788, 790, 71 Cal.Rptr. 123, 124 (1968).

The jury in the instant case implicitly found that appellee refused to submit to the blood test. In view of the controlling nature of HRS § 286-155 (1976 Repl.), appellants' attempt to use *Schmerber* to validate their plain failure to observe the provisions of that statute cannot be upheld. Moreover, although Instruction No. 5 correctly states that there is no Constitutional infirmity with regard to appellants' conduct, the instruction is nevertheless superfluous, and in view of HRS § 286-155 (1976 Repl.), it is inappropriate. The instruction, if given, would very likely have misled or confused the jury. Therefore, the trial court correctly refused Defendants' Instruction No. 5. *In re Estate of Ching,* 46 Haw. 127, 129, 376 P.2d 125, 127 (1962).

We summarily reject appellants' argument that the use of physical force to secure a blood sample from a person arrested for driving while intoxicated is valid as incident to a lawful arrest. The requirement set out in HRS § 286-155 (1976

Repl.) represents a "legislative indication that by the enact-
ment of the implied consent law, the Legislature thereby
intended to preclude the taking of blood samples as an inci-
dent to a lawful arrest over a person's refusal . . . ." *People v.
Fite*, 267 Cal.App.2d 685, 691, 73 Cal.Rptr. 666, 671 (1968).[12]

Therefore, we hold that the trial court properly refused to
give Defendants' Instructions No. 5 and No. 6 to the jury.

## II.

The second contention raised by appellants is that the
trial court erred in giving Plaintiff's Requested Instruction
No. 4 to the jury. That instruction reads in pertinent part as
follows:

> If you find that blood was taken from the plaintiff
> against his will and without his consent, then a battery
> has been committed and you may award such damages,
> general and/or punitive as in your sound discretion you
> may deem appropriate.

Appellants' objection to Plaintiff's Instruction No. 4 is
based upon their initial contention, discussed in Part I,
*supra*, that the taking of the blood sample from appellee

---

[12] Contrary to *Bush v. Bright, supra, People v. Fite* approved the forcible taking
of blood samples over an arrestee's refusal "in the absence of force or violence." 267
Cal. App.2d at 691, 73 Cal. Rptr. at 671. While the result reached in *Fite* is
technically consistent with the view expressed in *Bush* that acquiescence in the
refusal to submit is preferred in order to avoid violence, we are unable to adhere to
the *Fite* decision. While *Fite* would allow the forcible taking of blood samples "in the
absence of force or violence", it would appear difficult to predict whether an
arrestee will or will not react violently when the police attempt to remove a blood
sample against his will. We believe that the better view is for the police to refrain
from any attempt to obtain a blood sample when the arrestee refuses in order to avoid
the possibility of any violent confrontation between the police and the arrested
driver. Additionally, we note that the *Fite* decision is distinguishable from the instant
case because the California implied consent statute contains no explicit provision,
such as HRS § 286-155 (1976 Repl.), which prohibits the giving of a blood test when
the arrestee refuses to submit. The *Fite* case is premised upon the absence of such a
legislative specification.

despite his refusal was properly carried out under the auspices of *Schmerber* and was also permissible as incident to a lawful arrest. Our rejection of these arguments in Part I, *supra,* leads us to reject appellants' criticism of Plaintiff's Instruction No. 4.

Therefore, the jury was correctly instructed that if it found that blood was taken from appellee against his will and without his consent, then a battery was committed for which appellee was entitled to recover damages in a civil suit. *See* dicta in *Commonwealth, Dept. of Public Safety v. Hayden,* 484 S.W.2d 97, 99 (Ky.App. 1972).

### III.

It is next asserted by appellants that the trial court erred in refusing to give Defendants' Instruction No. 2 to the jury. That instruction tracks HRS § 286-154 and provides as follows:

> You are instructed that Section 286-154, Hawaii Revised Statutes entitled, "Consent of person incapable of refusal not withdrawn" reads as follows:
>
> > "The consent of a person deemed to have given his consent pursuant to section 286-151 shall not be withdrawn by reason of his being dead, unconscious, or in any other state which renders him incapable of consenting to examination, and the test may be given. In such event, a test of the person's blood shall be administered."

Appellants argue that appellee's vacillation as to whether or not he would take a sobriety test, coupled with his allegedly unruly and disorderly behavior while in the emergency medical facility, constituted sufficient evidence that appellee was "incapable of consenting" to any sobriety test. Thus, appellants contend, the blood test was lawfully administered pursuant to HRS § 286-154 (1976 Repl.). We disagree.

None of the parties have pointed out, and our research has failed to uncover, any cases construing the phrase "any other

state which renders him incapable of consenting to examination." However, we believe that this phrase should be construed narrowly, and in a manner consistent with HRS § 286-151 (1976 Repl.), in order to preserve the statutory scheme behind the implied consent laws. Therefore, it is our view that this statutory phrase should be interpreted as applying only where an arrestee is incapable of manifesting *any* consent *or* refusal to take a sobriety test. In this manner, the policy of avoidance of violent confrontations between police and driver will best be served.

Since HRS § 286-155 (1976 Repl.) commands that if the arrestee refuses to submit, no sobriety test shall be given, it becomes crucial, in order to determine whether any sobriety test may be administered, to initially determine whether the arrestee has in fact "refused" to take any sobriety test. Refusal need not be expressly given, but, instead, the arrestee's "words, acts, overall conduct and other manifestations of a willingness or unwillingness to take the sobriety test will be considered by the trier of the facts in determining whether there was a refusal." *Hoban v. Rice*, 25 Ohio St.2d 111, 117, 267 N.E.2d 311, 315 (1971).

We hold that HRS § 286-154 (1976 Repl.) applies only where an arrestee is absolutely incapable of manifesting, through words, acts, conduct or other means, his willingness or unwillingness to submit to a test. Such a situation may arise, for example, where a driver arrested on suspicion of intoxication may be conscious but in shock as the result of serious injuries sustained in an automobile accident. The arrested driver may thus be totally unable to respond to a request by a police officer to submit to a breath or blood test. The police officer would then be justified in having a blood test administered to the arrestee for purposes of determining the arrestee's blood-alcohol content.[13]

---

[13] However, if the arrestee is incoherent merely because of extreme intoxication, the arrestee would be regarded as having refused to submit to any test for purposes of HRS § 286-155 (1976 Repl.) and no test would be administered. *See State Dept. of Motor Vehicles v. McElwain*, 80 Wash.2d 624, 628, 496 P.2d 963, 965 (1972) (en banc). We agree with the general rule that a driver will not be allowed to defeat the

While we do not undertake to illustrate all of the possible situations under which an arrestee may be deemed "incapable of consenting to examination", we are satisfied that appellee was not so incapable of consenting under the facts presented here. Appellee's vacillation as to whether he would take the sobriety test was itself adequate to manifest a definite refusal on his part to take any such test. *White v. Fisher,* 49 App. Div.2d 450, 375 N.Y.S.2d 663 (1975); *Dobbins v. Tofany,* 38 App. Div.2d 870, 328 N.Y.S.2d 1004 (1972). Furthermore, appellee's alleged disorderly behavior, which in our opinion tends to demonstrate physical resistance to the administration of the blood test, fails to reveal an incapability to manifest consent. To the contrary, physical resistance is as overt a manifestation of refusal as a verbally expressed "no".

The evidence fails to present a question of fact as to whether appellee was incapable of consenting to examination. In reality, the record reveals that appellee was fully able to manifest his refusal to submit to the test and that he did in fact so refuse. Therefore, the trial court properly rejected Defendants' Instruction No. 2. *Goo v. Continental Casualty Co.,* 52 Haw. 235, 239, 473 P.2d 563, 566 (1970); *Gelber v. Sheraton-Hawaii Corp.,* 49 Haw. 327, 331, 417 P.2d 638, 640 (1966); *see Sherry v. Asing,* 56 Haw. 135, 149, 531 P.2d 648, 658 (1975).

IV

The final contention raised by appellants is that in view of the refusal of the district court judge to suppress the results of the blood test in appellee's criminal trial on the charge of

---

intent of the implied consent laws by later claiming that because he was too intoxicated to refuse to take the sobriety test, his license cannot be revoked. *Garcia v. Dept. of Motor Vehicles,* 253 Or. 505, 511, 456 P.2d 85, 88 (1969) (in banc); *Bush v. Bright, supra,* 264 Cal .App.2d at 793, 71 Cal. Rptr. at 126; *accord, State Dept. of Highways v. Normandin,* 284 Minn. 24, 27-28, 169 N.W.2d 222, 224 (1969); *accord, Perryman v. State,* 242 So.2d 762, 763 (Fla. App. 1971).

driving while under the influence of intoxicating liquor, the trial court in the instant case erred in submitting to the jury the question of whether appellee's blood had been properly taken. Appellants argue that the district court's decision regarding the admissibility of the blood test results estopped appellee to relitigate in a civil suit the issue of the legality of the taking of the blood sample. We find this contention to be unfounded.

Generally, where evidence has been obtained in violation of a statute, that evidence is not inadmissible per se in a criminal proceeding unless the statutory violation has constitutional dimensions. *People v. Brannon,* 32 Cal.App.3d 971, 975, 108 Cal.Rptr. 620, 622-23 (1973). We are unable to conclude that the failure of appellants to abide by the pronouncements of HRS § 286-155 (1976 Repl.) "violates any constitutionally protected right." 32 Cal.App.3d at 975, 108 Cal. Rptr. at 623. As previously discussed, *Schmerber* has established the *Constitutional* propriety of the forcible withdrawal of blood samples by the police under conditions such as those which were present in the instant case. Hence, the district judge was correct in refusing to suppress the results of the blood test in appellee's criminal prosecution.

However, a decision in a criminal context regarding the Constitutional propriety of admission of evidence obtained in violation of a statute ordinarily involves issues which are separate and distinct from those involved in a determination of civil liability for failure to comply with the requirements of that statute. Therefore, while the results of a blood test may be admissible in a criminal prosecution for driving while intoxicated despite the arrestee's unwillingness to submit to the test, such a determination does not confer legitimacy upon the undeniable violation of the implied consent statute. Police personnel thus proceed at their own risk in obtaining such evidence in violation of the strictures of the implied consent laws, for by proceeding in a manner contrary to provisions such as those contained in HRS § 286-155 (1976 Repl.), police officers and other police personnel involved in sobriety testing subject themselves, as here, to the possibility of civil litigation brought by aggrieved arrestees.

In reaching the result herein, we are not unmindful of the difficult situation with which police officers may be confronted when a person is arrested for driving while intoxicated. *Commonwealth, Dept. of Public Safety v. Hayden, supra,* 484 S.W.2d at 99-100. On the one hand, the police may be prompted by a desire to obtain reliable evidence of intoxication as soon after arrest as possible, for such evidence dissipates with the passage of time. On the other hand, the police are faced with the problem of having to elicit a positive consent or refusal from the arrestee before they can even attempt to proceed with any breath or blood test. This may be quite difficult when the arrestee is incoherent or responds in a highly ambiguous manner.

Nevertheless, the dictates of the implied consent statute are clear: so long as the arrestee manifests through words, acts, overall conduct or *any* other means his unwillingness to submit to a sobriety test, no such test is permitted under HRS § 286-155. The only recourse which may be taken under the statute against an arrestee who refuses to take a sobriety test is a proceeding to revoke his driver's license pursuant to HRS §§ 286-155 and 286-156 (1976 Repl.).[14]

Having considered all of the arguments raised by appellants, we are of the opinion that the judgment entered by the court below must be affirmed.

*Richard D. Wurdeman,* Deputy Corporation Counsel, for Defendants-Appellants.

*Francis O'Brien and David C. Schutter (Schutter, Levinson, & O'Brien* of counsel), for Plaintiff-Appellee.

---

[14] Of course, there is nothing to prevent the police from relying on other relevant evidence of intoxication in order to prosecute the arrestee with the criminal offense of driving while under the influence of intoxicating liquor.