STATE OF HAWAII, Plaintiff-Appellant, *v.* DAVELYNN KALOKE KAPIOLANI KAEKA, also known as Honey Girl, Defendant-Appellee

NO. 8377

(CRIMINAL NO. 55144)

OCTOBER 19, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

In this manslaughter prosecution against defendant Davelynn Kaeka, the State appeals from a pretrial order suppressing certain inculpatory statements made by Kaeka while in custody. Authority

for appeal by the State of an adverse interlocutory order is found in Hawaii Revised Statutes (HRS) § 641-13(7) (Supp. 1981).[1]

Kaeka was indicted on January 21, 1981 for recklessly causing the death of Melody Pagaduan, thereby committing the offense of manslaughter in violation of HRS § 707-702(1)(a) (1976). On March 23, 1981 Kaeka moved to suppress certain inculpatory statements which she made on November 8, 1980 to Police Officer Benjamin Pedro, Jr., and on November 9, 1980 to Police Detective Louis Souza. Pursuant to Rule 12 of the Hawaii Rules of Penal Procedure, a pretrial evidentiary hearing was held on defendant's motion.

At the conclusion of the hearing, the court found the following facts: On November 8, 1980, at approximately 4:15 a.m., Officer Pedro arrived at the scene of a reported stabbing at 1038 C-3 Lunalilo Street. Upon his arrival, he observed 23-year-old Kaeka kneeling over the victim on the sidewalk fronting the apartment. As Officer Pedro approached Kaeka, he heard her say, "Mel, Mel, talk to me." As he looked to discover the identity of the victim, Kaeka stated, "I'm sorry I stabbed her. I stabbed her in the kitchen." Officer Pedro had not yet asked Kaeka any questions. He then read to Kaeka her *Miranda v. Arizona*, 384 U.S. 436 (1966), procedural rights from the standard police printed card. After he read the final question on the card, "Would you like to tell me what happened?", Kaeka replied, "No, I'd like to talk to my father first." Officer Pedro then arrested Kaeka at about 4:30 a.m. and took her to the police station.

Unaware of Kaeka's statement to Officer Pedro, Detective Souza interviewed Kaeka at the police station 31 hours later. There is no evidence in the record that Kaeka had talked or tried to talk to her father. Detective Souza began the interview by reading to Kaeka her

---

[1] § 641-13 *By State in criminal cases.* An appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to chapter 602, in all criminal cases, in the following instances:

.   .   .   .

(7) From a pre-trial order granting a motion for the suppression of evidence, including a confession or admission, or the return of property in which case the intermediate appellate court or the supreme court, as the case may be, shall give priority to such an appeal and the order shall be stayed pending the outcome of the appeal[.]

*Miranda* rights from the standard police printed form. When asked if she understood what "counsel" meant, Kaeka replied, "[S]omething like an attorney." Detective Souza then explained the word "counsel," drawing an analogy to a high school counselor. He also asked her what the word "attorney" meant to her, whereupon she responded "lawyer." After these explanations, Kaeka answered and initialled the questions on the form as follows:

Do you want an attorney now: Yes _____ No X D.K.

If you decide to answer my questions without a lawyer being present, you still have the right to stop answering at anytime.

Do you understand what I have told you?
Yes X D.K. No_____
Would you like to tell me what happened?
Yes X D.K. No_____

| | |
|---|---|
| Signed: | Davelynn Kaeka K.K. |
| | Name |
| | 1038-C3 Lunalilo St. |
| | Address |
| | 11-9-80      11:35 [AM] PM |
| | Date            Time |

Kaeka then made an inculpatory statement, the subject of this appeal, which was typed by the police and signed by the defendant.

In an oral ruling rendered at the close of the evidentiary hearing, the trial court found that the statements made by Kaeka at the scene of the crime were spontaneous declarations not obtained by interrogation and, hence, were admissible. The court also found that the statement given to Detective Souza while Kaeka was in custody was voluntarily given and that Kaeka had fully understood her rights and had waived them knowingly and intelligently.[2] However, the court concluded that Kaeka's indication at the scene of the crime that she wanted to talk to her father before talking to the police required the suppression of the statement made to Detective Souza. The State

---

[2] The State agrees with the trial court's factual findings that Kaeka "fully understood her rights" and gave her statements to Detective Souza "voluntarily and intelligently." If Kaeka disagrees with the trial court's factual findings, query whether she could or should have cross-appealed.

appeals from that portion of the order granting the motion to suppress.

The State's claim of error below rests on two bases: first, that Kaeka's indication that she wanted to talk to her father before talking to the police was not tantamount to an invocation of her right to counsel, and, second, that although Kaeka did invoke her right to remain silent, the invocation did not create a per se proscription against subsequent interrogations. In response, Kaeka argues that the trial court was correct; that Kaeka's statement that she wanted to talk to her father was equivalent to a request for an attorney; that Kaeka's invocation of her right to remain silent created a per se proscription against subsequent police-initiated interrogations; and that this invocation necessarily precluded the police from any further attempts to interrogate her. Kaeka also contends that the police violated HRS § 803-9(4) (1976) and that the exclusionary rule should apply to suppress the evidence which was obtained in violation of said statute.

We agree with the State.

I.

*Miranda v. Arizona, supra,* which was based on the fifth amendment's privilege against self-incrimination, drew a distinction in consequences flowing from an individual's request to remain silent as opposed to a request for an attorney,[3] holding, *inter alia:*

> If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, *the interrogation must cease. . . .* If the individual states that he wants an attorney, the *interrogation must cease until an attorney is present.* At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning.

384 U.S. at 473-474 (footnote omitted) (emphasis added).

Unlike the right to counsel, invocation of the right to remain silent does not create a per se proscription of infinite duration upon

---

[3] We note that this case does not involve Kaeka's sixth amendment right to counsel. According to *Miranda,* a right to counsel exists under the fifth amendment to ensure an individual's knowing and intelligent exercise of his right against self-incrimination.

any further police-initiated questioning. *Michigan v. Mosely,* 423 U.S. 96, 102, 96 S. Ct. 321 (1975); *United States v. Pheaster,* 544 F.2d 353, 367 (9th Cir. 1976), *cert. denied sub nom. Incisco v. United States,* 429 U.S. 1099, 97 S. Ct. 1118 (1977).

Because of the difference in effect, we must first determine whether Kaeka's response to Officer Pedro's questions was a statement that she wanted to remain silent or that she wanted an attorney. The State agrees that Kaeka's statement to Officer Pedro was an invocation of her right to remain silent. It disputes that the request to see her father was also an indication of her desire for an attorney. We agree with the State.

In *Fare v. Michael C.,* 442 U.S. 707, 99 S. Ct. 2560 (1979), the Supreme Court refused to construe a minor's request to see his probation officer as a request for an attorney. Like the probation officer in *Fare,* a parent who is not trained in the law is unable to give legal advice or to protect a child's interest before the police and courts. Moreover, a parent's communications with a child are not shielded by a privilege. Rule 501, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (1981). Consequently, we decline to construe an adult's request to talk to her father as a request for an attorney.

Kaeka urges us to adopt the rationale in *People v. Burton,* 6 Cal.3d 375, 491 P.2d 793 (1971). In *Burton,* a minor's request to see one of his parents was construed as the minor's invocation of "his Fifth Amendment privilege." *Id.* 491 P.2d at 798. *Burton,* however, did not deal with an adult defendant and did not clearly indicate whether the minor's request was to remain silent or obtain an attorney or both.

The next question is whether Detective Souza violated Kaeka's fifth amendment rights when he, in effect, asked her if she had changed her mind about remaining silent. More specifically, the issue is whether Kaeka's right to cut off questioning was scrupulously honored by the police. *Michigan v. Mosely, supra* at 104. The answer is clearly yes since the facts show that Officer Pedro immediately ceased questioning upon Kaeka's invocation of her right to remain silent; that Detective Souza did not talk to Kaeka until 31 hours after her prior invocation of her right to remain silent; that Detective Souza advised Kaeka of her *Miranda* rights before questioning her; and that Kaeka then made her statements "voluntarily

and intelligently." Based on such facts, we hold that the principles of *Miranda* were not violated.

## II.

On appeal Kaeka raises the issue of whether the alleged violation of HRS § 803-9(4) (1976)[4] by the police mandates suppression of her subsequent confession under the exclusionary rule. In spite of her failure to raise this issue below, we will consider it. Rule 52(b), Hawaii Rules of Penal Procedure. However, we find this contention without merit.

First, Kaeka has failed to show a violation of HRS § 803-9(4). The record contains uncontradicted testimony by Detective Souza that Kaeka had free access to a telephone during her detention. It contains no evidence that she was denied a "fair opportunity" to see or consult with her father.

Second, even assuming a violation of HRS § 803-9(4), such statutory violation (right to consult with a family member) as contrasted to a constitutional violation (right to consult with an attorney) would not result in the application of the exclusionary rule. Section 803-10, HRS (1976),[5] imposes a penal sanction of up to one year of imprisonment for violation of HRS § 803-9. Neither it nor any other statute requires the exclusion of voluntary statements made by an arrested person to the police in cases where the police have violated the arrested person's rights under HRS § 803-9.

The limited scope of the exclusionary rule was defined by the Hawaii Supreme Court in *Rossell v. City and County*, 59 Haw. 173, 579 P.2d 663 (1978). "Generally, where evidence has been obtained in violation of a statute, that evidence is not inadmissible per se in a

---

[4] § 803-9 *Examination after arrest; rights of arrested person.* It shall be unlawful in any case of arrest for examination:

.   .   .   .

(4) In case the person arrested has requested that he see an attorney or member of his family, to examine the person before he has had a fair opportunity to see and consult with the attorney or member of his family[.]

[5] § 803-10 *Penalty.* Any person violating or failing to comply with section 803-9 shall be fined not more than $500 or imprisoned not more than one year, or both.

criminal proceeding unless the statutory violation has constitutional dimensions." *Id.* 59 Haw. at 187 (citations omitted).

Here, the alleged statutory violation lacks constitutional dimensions since Kaeka's fifth amendment rights were not infringed. Consequently, the exclusionary rule does not apply.

Accordingly, we hold that the trial court erred in suppressing Kaeka's statement to Detective Souza. The suppression order is vacated and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

*Thomas M. Pico, Jr.,* Deputy Prosecuting Attorney, for plaintiff-appellant.

*Anthony H. Yusi (Milton S. Tani* on the brief), Deputy Public Defenders, for defendant-appellee.