JANICE HIGGINS, Appellant, v. STATE OF NEVADA, DEPARTMENT OF MOTOR VEHICLES, Respondent.

No. 15858

September 24, 1985          706 P.2d 506

*B. Mahlon Brown, III,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City, and *Paul L. Wilkin,* Deputy Attorney General, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a judgment of the district court upholding an order of a Department of Motor Vehicles hearing officer revoking appellant's driving privileges. The initial order entered October 31, 1983 was affirmed April 16, 1984 after appellant presented additional testimony from Dr. Thorne Butler.

Appellant was injured in a single car accident September 4, 1983 at approximately 4:55 a.m. while driving on Tropicana Avenue in Las Vegas. Her vehicle crossed two lanes of traffic, struck a light pole, and ended up in the dirt portion of a parking

lot. The left side of appellant's vehicle was damaged.[1] Medicaid personnel responding to the accident had difficulty in removing appellant from the car.

Michael Cranson, a traffic officer for Metropolitan Police Department, investigated the accident. Appellant was pinned inside the car when Officer Cranson arrived at the accident scene. Paramedics were working to extricate her from the driver's compartment, and the officer did not speak to her at that time. He said, "She was obviously injured." Although he could not recall specifically any comments made by her at the scene, he said her speech was slurred, her eyes were red and he could smell the odor of an alcoholic beverage on her breath.

Appellant was taken by ambulance to Desert Springs Hospital where she was treated for leg and arm injuries, a torn rib cage, internal injuries and a broken pelvis. Appellant had apparently lost consciousness at the accident scene or while in the ambulance. Skull X-rays were taken at the hospital. Blood and urine tests were administered and when blood was discovered in her urine, she was given an intravenous pyelogram in which dye was put into the blood for an X-ray study of the kidneys. 50 miligrams of Demerol and 50 miligrams of Phenergan were administered to appellant in the emergency room. Dr. Thorne Butler testified that Demerol is an analgesic or pain killer, and that Phenergan is a phenothiazine derivative primarily used as a mood relaxer. Both drugs act as depressants on the central nervous system.

Officer Cranson did not consult with hospital personnel about appellant's condition or treatment, but went directly to the room where she was confined. Appellant testified that she was sleeping when the officer entered. Cranson did not recall whether appellant was awake or asleep but did say, "She may have had her eyes closed."

The officer said that based upon his experience "as a police officer from past investigations," he determined that appellant knew what day it was, that she was in the hospital and understood what was going on around her. He "advised her of her Implied Consent and her Miranda warning at that time."[2]

---

[1]The investigating officer testified that the accident report showed moderate to major damage to the car.

[2]Officer Cranson testified that he had read the following statement of the implied consent law to her:

> You are requested to submit to a chemical test to determine the alcoholic content and/or controlled substance content of your blood. You have a choice of whether the test be of your blood, urine or breath if available. A refusal would result in a revocation of your driving privilege. If this is your first refusal, you will not be eligible for a driver's license, permit or privilege to drive for a period of one year. If

Officer Cranson testified that appellant "kept requesting her mother repeatedly without acknowledging whether she would take her blood or urine test." He further stated that appellant "was irritable, belligerent. She kept stating, 'I don't want to talk to anyone. I want to speak to my mother. I want my mother here.'" He made no inquiry to determine that blood and urine samples had in fact been taken from appellant while in the hospital. He admitted that he might have become "belligerent possibly because of her attitude. I'm only human."[3]

Appellant testified that at the time of the accident she had no control over the car. A letter was admitted in evidence from the shop manager of Pete Findlay Oldsmobile which stated that when the car was towed there, it had no power steering belt which would have made it impossible to steer.

Appellant testified that she could remember little of the accident and her contact with Officer Cranson at the hospital. She stated that she was sleeping after receiving shots and that

> He came in and started screaming at me, I had to take to sign a thing to take a test and I said, I really didn't know what he was talking about at first, and then he says, "you gotta submit, you gotta sign a thing to a test." He was screaming and he said, and I said they already stuck needles in me and I said, you're not sticking any in me. I just remember saying I wouldn't take any more needles.

Appellant stated that Officer Cranson left the room and then returned, at which time he threw a paper on the bed. She testified that it was not her intention to refuse to submit to a blood test; that she did not understand what was happening until several days later when she read "that thing he threw."

The only medical witness to testify was Dr. Thorne Butler,[4] a

---

you refused to submit to a test and previously had your license permit or privilege to drive suspended or revoked for failing to submit to such a test within seven years, you will not be eligible for a license, permit or privilege to drive for a period of three years.

[3]A letter dated September 25, 1983 from another patient in the same room as appellant, Jean Jones, was received in evidence. Ms. Jones wrote,

While in the hospital room with you at Desert Springs I overheard a very sarcastic and extremely rude man giving you a hard time concerning your accident and your license. I could not believe anyone could put that much stress on a person in that much pain and suffering that you were in that morning.

[4]The emergency room physician who treated appellant was subpoenaed by her but failed to appear. Appellant's attorney stated that: "Dr. Homansky told us over the phone this morning that he would not be here, period, even though he was requested to answer the subpoena."

board certified pathologist and forensic toxicologist whose qualifications were stipulated to for purposes of the hearing. Dr. Butler stated,

> It is my medical opinion then that Miss Higgins who had suffered a fractured pelvis and was being treated for pain with demerol and a phenothiazine tranquilizer (phenergan) would not be in any condition to give an intelligent response or to comprehend the implied consent laws concerning the obtaining of a blood specimen for a blood alcohol analysis.

Nevada's implied consent law requires drivers and those exerting actual physical control over a vehicle while upon the highways or premises to which the public has access to submit to a preliminary breath test or evidentiary test to determine if they are under the influence of an intoxicating liquor or a controlled substance. *See* NRS 484.382 and NRS 484.383. Individuals having an evidentiary blood alcohol level of .10 percent or more, or who are directed by an officer to take a test but refuse, face revocation of driving privileges. *See* NRS 484.385(1).

The Department of Motor Vehicles revoked appellant's driving privileges because of her failure to submit to the evidentiary test. *See* NRS 484.383(7) and NRS 484.384(1). While appellant was given the opportunity to withdraw her consent, we conclude that based upon the objective facts and circumstances, she was incapable of doing so.

NRS 484.383(3) provides:

> Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn his consent, and any such test may be administered whether or not the person is informed that his failure to submit to the test will result in the revocation of his privilege to drive a vehicle.

In State v. Campbell, 615 P.2d 190, 195 (Mont. 1980) the court observed:

> Here, the officers observed that Campbell was seriously injured and in great pain, were advised by a nurse that it would be better not to try to talk to him, and could not get him to respond coherently to questions when they did talk with him. Given this evidence available to the officers, it appears they properly determined that Campbell was in a condition rendering him incapable of refusing to consent to a blood test.

Similarly, in State v. Morgan, 646 P.2d 1177, 1180 (Mont. 1982), the court stated: "Even though Morgan was conscious and

apparently coherent, his physical condition was serious enough as determined by his doctor to render him incapable of refusing to consent to a blood test." *See also* Rossell v. City & Cty. of Honolulu, 579 P.2d 663, 671 (Hawaii 1978) (giving as an example of incapacity a driver who is conscious but in shock because of serious injuries and is unable to respond to an officer's request to submit to a breath or blood test).

Corroborating medical evidence is critical in evaluating whether a suspected individual was incapable of withdrawing consent. *See* People v. Massong, 482 N.Y.S.2d 601, 602 (N.Y.App.Div. 1984); Com., Dept. of Transp., Etc. v. Michalec, 415 A.2d 921, 922 (Pa.Commw.Ct. 1980).

In the case at bar, Officer Cranson, who apparently had no medical training, came to the subjective conclusion that appellant was capable of refusing to submit to the test and revoked her license. The only medical testimony was presented by Dr. Thorne Butler, who stated that in his opinion appellant was not able to comprehend the implied consent law or give an intelligent response. Considering the objective factors,[5] namely, the circumstances of the accident, appellant's multiple serious injuries, sedated condition, and general incoherency, along with uncontradicted medical testimony, we conclude that she was incapable of refusing to submit to the required evidentiary test. Accordingly, we reverse the judgment of the district court and remand for entry of an order restoring appellant's driving privileges in accordance with the views expressed herein.

---

[5]As Officer Cranson was still investigating the accident scene when appellant was being treated at the emergency room, and it appears he did not speak with the hospital's medical personnel, he would not have known the extent of the appellant's injuries or that she had been sedated.