32 P.3d 1106

STATE of Hawai'i, Plaintiff–Appellee,

v.

Allen T. HANAOKA, Defendant–Appellant.

No. 23377.

Intermediate Court of Appeals of Hawai'i.

May 3, 2001.

Certiorari Granted June 4, 2001.

Isaac Keahi Smith, on the briefs, Honolulu, for Defendant–Appellant.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Allen T. Hanaoka (Hanaoka) appeals the district court's March

21, 2000 judgment convicting him of Driving Under the Influence of Alcohol (DUI), Hawai'i Revised Statutes § 291–4 (Supp.1999), and fining him. The March 21, 2000 judgment was stayed pending appeal. Specifically, Hanaoka challenges the district court's March 7, 2000 Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Suppress Results of the Breath Test (March 7, 2000 Findings, Conclusions and Order).

The question is whether the rule of *State v. Wilson,* 92 Hawai'i 45, 987 P.2d 268 (1999), should be applied in favor of Hanaoka. Our answer is yes. Therefore, we reverse, in part, the March 7, 2000 order denying the motion to suppress, vacate the March 21, 2000 judgment, and remand.

## BACKGROUND

On August 31, 1999, Hanaoka was arrested, given a breath test, and charged with DUI. On November 23, 1999, Hanaoka filed a Motion to Suppress Results of the Breath Test. On December 21, 1999, Plaintiff–Appellee State of Hawai'i (State) filed its Memorandum in Opposition to Defendant's Motion to Suppress Evidence, stating, in relevant part, as follows:

> [Hanaoka's] motion presents the issue of whether the exclusionary rule announced in *[State v. ]Wilson[,* 92 Hawai'i 45, 987 P.2d 268 (1999),] applies retroactively to blood and breath alcohol tests administered to DUI arrestees whose arrests took place between January 30, 1997, the date *Gray v. Administrative Director of the Court, State of Hawai'i,* 84 Hawai'i 138, 931 P.2d 580 (1997) was decided, and October 28, 1999, the date *Wilson* was decided, where the arresting officer did not inform the arrestee without a prior alcohol enforcement record that the ADLRO could suspend his license for up to one year if he took the test and failed it.

In its March 7, 2000 Findings, Conclusions and Order, the district court stated, in relevant part, as follows:

1. Hawai'i Revised Statutes § 286–155 (1976 Repl.) states that "[i]f a person under arrest

## FINDINGS OF FACT

. . . .

3. While [Hanaoka] was under arrest, the arresting HPD officer read to [Hanaoka] the statement printed on the HPD 396B that states:

. . . .

> That if you refuse to take any tests the consequences are as follows:

> If your driving record shows no prior alcohol enforcement contacts during the five years preceding the date of your arrest, your driving privileges will be revoked for one year instead of the three month revocation that would apply if you chose to take a test and failed it.

. . . .

## CONCLUSIONS OF LAW

. . . .

2. [Hanaoka] has not shown that he was in fact harmed or misled because of the information the HPD officer gave him regarding the sanctions that he faced under [HRS] Chapter 286.

3. Because [Hanaoka] has failed to show that he has suffered any harm as [a] result of an alleged incomplete disclosure by the police officer regarding the sanctions that he faced under [HRS] Chapter 286, [Hanaoka] does not have the requisite standing to bring forth the Motion.

■ The Court has considered retroactivity of *State v. Wilson,* 93 [92] Hawai'i 45 [987 P.2d 268] (1999), and will not give retroactive effect in this matter.

## RELEVANT PRECEDENT

*Rossell v. City and County of Honolulu,* 59 Haw. 173, 579 P.2d 663 (1978), is a civil case in which Rossell sought damages from those who, after arresting him for DUI, allegedly gave him a blood test without his consent after they had rendered him unconscious. The giving of this blood test violated Hawai'i's implied consent statute.[1] Rossell had previously been convicted of DUI after the court denied Rossell's motion to suppress

refuses to submit to a test of his breath or blood, none shall be given."

the results of the blood test. In the civil case, the jury implicitly found that Rossell had refused to submit to the blood test. The Hawai'i Supreme Court affirmed the jury's verdict awarding damages to Rossell. In its opinion, the court stated, in relevant part, as follows:

The final contention raised by appellants is that in view of the refusal of the district court judge to suppress the results of the blood test in [Rossell's] criminal trial on the charge of [DUI], the trial court in the instant case erred in submitting to the jury the question of whether [Rossell's] blood had been properly taken. Appellants argue that the district court's decision regarding the admissibility of the blood test results estopped [Rossell] to relitigate in a civil suit the issue of the legality of the taking of the blood sample. We find this contention to be unfounded.

Generally, where evidence has been obtained in violation of a statute, that evidence is not inadmissible per se in a criminal proceeding unless the statutory violation has constitutional dimensions. We are unable to conclude that the failure of appellants to abide by the pronouncements of HRS § 286–155 (1976 Repl.) "violates any constitutionally protected right." As previously discussed, *Schmerber[ v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) ] has established the *Constitutional* propriety of the forcible withdrawal of blood samples by the police under conditions such as those which were present in the instant case.[2] Hence, the district judge was correct in refusing to suppress the results of the blood test in [Rossell's] criminal prosecution.[3]

However, a decision in a criminal context regarding the Constitutional propriety of admission of evidence obtained in violation of a statute ordinarily involves issues which are separate and distinct from those involved in a determination of civil liability for failure to comply with the requirements of that statute. Therefore, while the results of a blood test may be admissible in a criminal prosecution for driving while intoxicated despite the arrestee's unwillingness to submit to the test, such a determination does not confer legitimacy upon the undeniable violation of the implied consent statute. Police personnel thus proceed at their own risk in obtaining such evidence in violation of the strictures of the implied consent laws, for by proceeding in a manner contrary to provisions such as those contained in HRS § 286–155 (1976 Repl.), police officers and other police personnel involved in sobriety testing subject themselves, as here, to the possibility of civil litigation brought by aggrieved arrestees.

*Rossell,* 59 Haw. at 186–87, 579 P.2d at 671–72 (citations omitted, footnotes and emphasis added).

In *State v. Pattioay,* 78 Hawai'i 455, 469 n. 28, 896 P.2d 911, 925 n. 28 (1995) (citations omitted), the Hawai'i Supreme Court stated, in relevant part, as follows:

[T]he court's inherent powers [to exclude evidence not obtained in violation of the constitution] "must be exercised with restraint and discretion" and only in exceptional circumstances. More importantly, invocation of a court's inherent power is legitimate only when reasonably necessary to effectuate its "judicial power," that is, when reasonably necessary to carry out

---

2. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), was decided prior to California's implied consent statute. *Rossell v. City and County of Honolulu,* 59 Haw. 173, 179 n. 8, 579 P.2d 663, 667–68 n. 8 (1978).

3. Footnote 2 of the dissenting opinion in *State v. Wilson,* 92 Hawai'i 45, 987 P.2d 268 (1999), asserts that *"Schmerber* does not allow officers to forcibly restrain an unwilling arrestee and extract his or her blood." *Id.* at 56, 987 P.2d at 279. Assuming the truth of this statement, query whether *Rossell* modifies it. Rossell testified that the police choked him into unconsciousness and

then extracted his blood before he regained consciousness. The police testified that the blood sample was extracted after Rossell had regained consciousness and while he was seated passively. *Rossell,* 59 Haw. at 175–76, 579 P.2d at 666. Whichever version was the fact, it appears that the dispositive fact was the lack of physical resistance while the blood was extracted. The fact that the lack of physical resistance while the blood was extracted was a result of having been previously choked into unconsciousness appears to have been inconsequential.

and protect the court's constitutional authority.

In *Wilson,* the Hawai'i Supreme Court affirmed the district court's order granting the defendant's motion to suppress the blood test results in his criminal DUI prosecution. The defendant had consented to a blood test after he was misinformed by the arresting officer

[t]hat if you refuse to take any tests the consequences are as follows: (1) if your driving record shows no prior alcohol enforcement contacts during the five years preceeding [sic] the date of arrest, your driving privileges will be revoked for one year *instead of the three month revocation that would apply if you chose to take the test and failed it* [.]

*Id.* at 47, 987 P.2d at 270 (emphasis in the original). The misinformation was that "your driving privileges will be revoked for one year instead of the three month revocation that would apply if you chose to take the test and failed it[.]" *Id.* In truth, the relevant time period for choosing to take the test and failing it was revocation anywhere from three months to one year. The Hawai'i Supreme Court decided that because the arresting officer relevantly and materially misinformed the defendant of the administrative penalties applicable upon choosing to take the blood test and failing it, the defendant did not knowingly and intelligently consent to a blood test. According to the Hawai'i Supreme Court,

[t]he statutory scheme, however, also protects the rights of the driver in that he or she may withdraw his or her consent before a test is administered. To this end, Hawaii's implied consent scheme *mandates* accurate warnings to enable the driver to knowingly and intelligently consent to or refuse a chemical alcohol test.

. . . .

. . . Not only was the information given to Wilson misleading, it was relevant to his decision whether to agree to or refuse the blood alcohol test. Thus, although Wilson elected to take the test, he did not make a knowing and intelligent decision whether to exercise his statutory right of consent or refusal.

*Id.* at 49–51, 987 P.2d at 272–74 (footnotes and citations omitted) (emphasis in the original).

In *Wilson,* the dissenting opinion noted that "[the defendant] has *never* asserted that he would have refused the test had he received a full explanation of the penalties under *Gray[ v. Administrative Director of the Court,* 84 Hawai'i 138, 931 P.2d 580 (1997) ]." *Wilson,* 92 Hawai'i at 60, 987 P.2d at 283 (emphasis in original). The majority opinion was silent on the question of the defendant's reliance on and prejudice from the relevant and material insufficient information/misinformation and concluded that the misinformation and/or insufficient information resulted in the absence of a knowing and intelligent consent.

*State v. Ikezawa,* 75 Haw. 210, 857 P.2d 593 (1993), is Hawai'i's precedent on the retroactivity of case law. It decided, in relevant part, as follows: (1) *State v. Stone,* 65 Haw. 308, 651 P.2d 485 (1982), announced an interpretation of Hawai'i Rules of Penal Procedure (HRPP) Rule 48; (2) in 1991, relying on *Stone* Ikezawa filed a motion to dismiss, the circuit court denied the motion, Ikezawa was convicted, and Ikezawa appealed; (3) while Ikezawa's appeal was in process, the Hawai'i Supreme Court, in *State v. Balauro,* 73 Haw. 70, 828 P.2d 267 (1992), reversed the *Stone* interpretation; (4) if Ikezawa had known that *Balauro* would subsequently reverse the *Stone* interpretation, "he could have filed his motion later when a HRPP 48(b)(1) dismissal would have been required." *Id.* at 213–14, 857 P.2d at 595; and (5) in *Ikezawa,* the Hawai'i Supreme Court decided that Ikezawa justifiably relied on the *Stone* interpretation when he filed his motion to dismiss and that the *Balauro* interpretation would not be retroactively applied to Ikezawa's prejudice.

In a subsequent case, the Hawai'i Supreme Court noted:

The *Ikezawa* court recognized the need to consider different factors in determining whether to apply a decision retroactively. We noted that the United States Supreme Court "has given consideration to three factors: (a) the purpose to be served by the newly announced rule[;] (b) the extent of reliance by law enforcement authorities

on the old standards[;] and (c) the effect on the administration of justice of a retroactive application of the new standards." We stated that, alternatively, "[f]actors to be considered include: Prior history of the rule in question, its purpose and effect, and whether retroactive operation will further or retard its operation; interests in the administration of justice and the integrity of the judicial process." We emphasized that implicit in these factors is the concept of fairness.

State v. Nakata, 76 Hawai'i 360, 377, 878 P.2d 699, 716 (1994) (citations omitted).

## DISCUSSION

Hanaoka wants the *Wilson* rule applied to his benefit. In contrast, in its support of the March 21, 2000 judgment and the March 7, 2000 order denying Hanaoka's motion to suppress the evidence of the breath test, the State relies on Conclusions of Law Nos. 2, 3, and 5 quoted above and seeks the application of the *Ikezawa/Nakata* test.

As noted above, the Hawai'i Supreme Court stated in *Rossell* that "[g]enerally, where evidence has been obtained in violation of a statute, . . . evidence is not inadmissible per se in a criminal proceeding unless the statutory violation has constitutional dimensions." *Rossell*, 59 Haw. at 187, 579 P.2d at 672. The State contends that the *Wilson* rule reversed the *Rossell* rule. In the words of the State, "[t]he prior history of the exclusionary rule and the clear precedent established in *Rossell* show *Wilson* articulates a new standard for applying the exclusionary rule." The State argues that but for the *Wilson* rule, the results of Hanaoka's breath test would have been admissible in evidence in his criminal case and, therefore, the *Ikezawa/Nakata* test must be applied.

Hanaoka's arrest occurred on August 31, 1999. *Wilson* was decided on October 28, 1999. Hanaoka's November 23, 1999 motion to suppress was denied on March 7, 2000. The question is whether the October 28, 1999 *Wilson* rule should be applied to the benefit of Hanaoka. Our answer is yes.

The first *Ikezawa/Nakata* factor is "the purpose to be served by the newly announced rule." We conclude that the purpose of the *Wilson* rule is to not allow the State to benefit from, and the defendant to be prejudiced by, evidence of the results of a blood or breath alcohol test to which the defendant did not knowingly and intelligently consent because the police relevantly and materially misinformed the defendant of the administrative penalties applicable upon choosing to take the test. The State responds that the police are now in compliance with *Wilson* and, therefore, "[r]etroactive application of the *Wilson* decision will thus have no effect on future police conduct[.]" In our view, merely not allowing the police to benefit from their error in one prior case while allowing them to benefit from their error in all other prior cases does not serve the primary purpose of the exclusionary rule, namely, to deter illegal police conduct. *Pattioay*, 78 Hawai'i at 468, 896 P.2d at 924.

The second *Ikezawa/Nakata* factor is "the extent of reliance by law enforcement authorities on the old standards[.]" We conclude that it is highly unlikely that the police relied on any standards when they relevantly and materially misinformed Hanaoka of the administrative penalties applicable upon choosing to take the test and failing it. If they anticipated that the evidence obtained following their misinformation would not be suppressed, such an anticipation should be discouraged.

The third *Ikezawa/Nakata* factor is "the effect on the administration of justice of a retroactive application of the new standards." We conclude that the effect will be positive. *Wilson* is precedent that the police must not be permitted to relevantly and materially misinform drivers they stop about the administrative penalties applicable upon choosing to take a blood or breath alcohol test and failing it.

As noted above, the *Nakata* opinion notes "that implicit in these factors is the concept of fairness." Thus, we must decide which of the following three options noted by the Hawai'i Supreme Court in *Tachibana v. State*, 79 Hawai'i 226, 238, 900 P.2d 1293, 1305 (1995), is the fairest in Hanaoka's case: (1) do not apply the *Wilson* rule in the *Wilson* case or in any other prior case; (2) apply the

*Wilson* rule in the *Wilson* case but not in any other prior case; and (3) apply the *Wilson* rule in the *Wilson* case and in all cases pending and/or not yet final.

Option (1) is not available because the *Wilson* rule was applied in the *Wilson* case. In other words, it was applied on October 28, 1999, to an arrest that occurred on November 10, 1997. The question is whether it now should be applied to an arrest that occurred on August 31, 1999. We must choose option (2) or option (3).

In essence, the facts in *Wilson* and the facts in Hanaoka's case are the same. The only differences are the dates of the arrests, the dates of the appellate decisions, and the fact that Wilson took a blood test whereas Hanaoka took a breath test. We conclude that these differences are not material. Wilson obtained his final judicial victory on October 28, 1999. The facts in Hanaoka's case not being materially different, there is no reason why Hanaoka should not likewise obtain his final judicial victory in 2001. The *Wilson* rule was applied to the benefit of Wilson. There is no reason why it should not be applied to the benefit of Hanaoka. If Hanaoka had been arrested on the same day as Wilson, on November 10, 1997, and Ha-

naoka's appeal had run concurrently with Wilson's appeal, the *Wilson* rule would have been applied to the benefit of Hanaoka. The fact that Hanaoka was arrested on August 31, 1999, and his appeal is now being decided, should not deprive him of the benefit of the *Wilson* rule.

### CONCLUSION

Accordingly, with respect to the district court's March 7, 2000 Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Suppress Results of the Breath Test, we reverse Conclusions of Law nos. 2, 3, and 5 and the order denying the motion to suppress. We vacate the March 21, 2000 judgment convicting Defendant–Appellant Allen T. Hanaoka of Driving Under the Influence of Alcohol, Hawai'i Revised Statutes § 291–4 (Supp.1999), and remand this case for further proceedings consistent with this opinion.