Marjorie GRAHAM, Appellant,

v.

STATE of Alaska, Appellee.

No. 4092.

Supreme Court of Alaska.

Sept. 4, 1981.

Gerald W. Markham, Kodiak, for appellant.

Richard J. Ray, Asst. Dist. Atty., William L. Mackey, Dist. Atty., Kodiak, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Justice.

In this appeal a motorist questions the Department of Public Safety's summary revocation of her driver's license, based upon her refusal to submit to a breathalyzer examination, following her arrest for operating a motor vehicle while under the influence of intoxicating liquor.

Marjorie Graham, the appellant, was arrested in Kodiak at approximately 2:30 a. m. on August 6, 1977. She was advised of her *Miranda*[1] rights and transported to the Kodiak Police Station. There she was asked to perform a breathalyzer test. She refused to perform the test, despite repeated warnings by the arresting officer that such refusal would result in the revocation of her driver's license.[2]

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. AS 28.35.032 provides in part:
   (b) Upon receipt of a sworn report of a law enforcement officer that a person has refused to submit to a chemical test authorized under § 31 of this chapter, containing a statement of the circumstances surrounding the arrest and the grounds upon which his belief was based that the person was operating a motor vehicle in violation of § 30 of this chapter,

On September 6, 1977, Graham received a notice from the Department informing her that her driver's license was revoked for a period of ninety days, effective September 11, 1977. Graham, pursuant to AS 28.35.-032(b) and (c)[3] and 28.35.034,[4] initiated a proceeding in the district court to rescind the Department's action. Graham also applied for an order staying the revocation of her license, pending the outcome of the hearing in the district court. On September 16, her application for stay was denied. Thereafter, on September 29, the district court modified the Department's revocation of Graham's license. After finding "that extenuating circumstances exist and that a revocation of defendant's license would create an extreme hardship," the court ordered: "MARJORIE GRAHAM'S operator's license . . . is hereby limited until December 10, 1977, allowing defendant to drive from her house to her place of employment only."[5] On appeal to the superior court, the district court's ruling was affirmed. This appeal followed.

the Department of Public Safety shall notify the person that his license or non-resident privilege to drive a motor vehicle in the state is revoked or suspended, or that no original license or permit will be issued for three months. In the same notice the department shall inform the person that he may initiate a proceeding in the district court to rescind the department's action. The court proceeding shall be without jury and shall be limited to the issues of whether

(1) the arresting officer had reasonable grounds to believe the arrested person had been operating a motor vehicle in the state while under the influence of intoxicating liquor;

(2) the arrested person refused to submit to the breath test upon request of the officer after being advised that his refusal would result in the suspension, revocation, or denial of his license; and

(3) the accused defendant was informed fairly of the nature of the tests, the accuracy of the methods, machines, equipment involved, the expertise of the person administering the test, or operator of the machines, and the accused given such other reasonable information as may be requested by him.

(c) If the issues set out in (b)(1), (2) and (3) of this section are determined in the affirmative, the court shall sustain the action of the department. If one or more of the issues are determined in the negative, the department's

# I

Before proceeding to the main issues in this case, we note that, since the ninety day revocation period has run, there is, at least superficially, a question of mootness. We are satisfied, however, that the issues raised are entitled to review.

We reach this conclusion for two reasons. First, the collateral consequences of a driver's license revocation may be substantial. Such a revocation can result in higher insurance rates, adverse employment consequences and other serious results. Second, this case involves a matter "of grave public concern and is recurrent but is capable of evading review." *Doe v. State*, 487 P.2d 47, 53 (Alaska 1971).

# II

Graham first contends that she was not clearly informed of the differing rights that she had under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Alaska's implied consent statute, AS 28.35.031–.034, respectively. The crux of

action shall be rescinded. If the action of the department in suspending or revoking a non-resident's privilege to operate a motor vehicle in this state is sustained by the court, the department shall give information in writing of the action taken to the motor vehicle administrator of the state of the person's residence and to any state in which he has a license.

3. See note 2 *supra*.

4. AS 28.35.034 provides:

A person whose license or permit to drive a motor vehicle has been suspended or revoked under the provisions of § 32 of this chapter shall surrender his license or permit to the department on receipt of notice of the revocation. Such a person is ineligible for an operator's license or permit for three months following the date on which the license or permit was received by the department, unless the district court finds that extenuating circumstances exist which would cause extreme hardship, in which case the suspension or revocation may be modified or nullified. After the three months period has expired the person may make application for a new license as provided by law.

5. See note 4 *supra*.

her argument is that after first being advised that she was not required to answer any questions, she was then asked if she would take the breathalyzer test, leaving her confused as to whether she had the right, under *Miranda*, to refuse either to submit to the test or answer the question. As a result, she refused to answer and her refusal to answer was deemed a refusal to take the test. In addition to her argument that she was confused about her rights, Graham claims that she never actually refused to take the test, that all she did was remain silent.

The constitutionality of the implied consent statute is not in dispute. Such laws are in effect in all fifty states and their validity has long been established. *See Rossell v. City and County of Honolulu*, 59 Haw. 173, 579 P.2d 663, 668 (1978). AS 28.35.031, is typical of these statutes:

> A person who operates or drives a motor vehicle in this state shall be considered to have given consent to a chemical test or tests of his breath for the purpose of determining the alcoholic content of his blood if lawfully arrested for an offense arising out of acts alleged to have been committed while under the influence of intoxicating liquor.

■ Under Alaska law, as in most other jurisdictions, one arrested for operating a motor vehicle while under the influence of intoxicating liquor has no constitutional or statutory right to refuse to submit to a breathalyzer test. *Palmer v. State*, 604 P.2d 1106, 1110 (Alaska 1979); *Wirz v. State*, 577 P.2d 227, 230 (Alaska 1978). Nor

does he or she have the right to have counsel present before being required to take the test. *Anchorage v. Geber*, 592 P.2d 1187, 1192 (Alaska 1979). Since there is no right of refusal, we have also held that it is not necessary to inform the person arrested that he or she can refuse the test, in order to render the test results admissible. *Palmer v. State*, 604 P.2d at 1110.[6] Thus, the question presented in this appeal is whether the police have an affirmative duty to explain to the person arrested that the *Miranda* warning does not apply to a request that he or she submit to a breathalyzer test.

■ Operating a motor vehicle while intoxicated is a criminal offense, entitling the person arrested to the rights specified in *Miranda*. As was done in this case, *Miranda* warnings will undoubtedly be given in many cases, shortly after the alleged offender is taken into custody. Therefore, care must be taken to insure that the arrested person is not misled about his or her rights, or the absence thereof, under the implied consent statute.

■ That such confusion is possible is clearly shown by comparing the *Miranda* warning with the implied consent warning. The former advises the person arrested that he or she has the right to remain silent, the right to have counsel present, and that anything said may be used against the person. The implied consent warning, on the other hand, informs the person arrested that there is no right to refuse to take the breathalyzer test and that such refusal can result in revocation of the offender's operator's license.[7] There is always the danger,

---

6. In *Palmer v. State*, 604 P.2d 1106, 1110 (Alaska 1979), we said:

> While AS 28.35.032(a) prohibits the giving of any other blood test when the person arrested refuses to submit to a breathalyzer examination ... it does not otherwise grant or recognize a *right* on the part of the arrested person to refuse that examination. Since the legislature has not imposed a specific requirement that the person be informed that he has the right to refuse the breathalyzer examination, we have held that there is no statutory requirement that such advice be given.... We are equally unpersuaded that

> such advice is required as a matter of constitutional due process.

(Emphasis in original) (citations and footnote omitted).

7. In addition to the arresting officer's statements to her, Graham was furnished with a written "implied consent warning," advising her of the officer's qualifications for administering the test, the scientific basis for the test, the accused's right to have a qualified person of her own choosing administer a chemical test in addition to the one administered by the police, and the consequences of refusing to submit to the test. With regard to the final point, the warning was explicit:

therefore, that the arrested person may be misled into believing that he or she either has a right to have counsel present before deciding whether to take the test, or can refuse to submit to the test without suffering the threatened consequences of that refusal.

■ In *State Department of Highways v. Beckey*, 291 Minn. 483, 192 N.W.2d 441 (1971), the Minnesota Supreme Court stated:

> Where the responses of the arrested person upon being requested to submit to a chemical test indicate that he is asserting a right which he has just been told he is free to assert, it is incumbent upon the officer to make clear that he has no constitutional right to consult an attorney before deciding whether he will submit to a test but merely that, at the time the request was made, he has a right to choose between permitting the test or refusing the test at the risk of the revocation of his driver's license.

192 P.2d at 445. We agree with this statement and hold that where an arrested person refuses to submit to a breathalyzer test, the administering officer must inquire into the nature of the refusal and, if it appears that the refusal is based on a confusion about a person's rights, the officer must clearly advise that person that the rights contained in the *Miranda* warning do not apply to the breathalyzer examination.

■ The defendant motorist, however, has the burden of showing that he or she was in fact confused. *State v. Severino*, 56 Haw. 378, 537 P.2d 1187, 1190 (1975). In the instant case, Graham's claim is not supported by the evidence. The events that occurred at the Kodiak Police Station were videotaped. *See Palmer v. State*, 604 P.2d 1106, 1107–09 (Alaska 1979). We have reviewed the videotape recording and conclude that the arresting officer clearly and repeatedly advised Graham of the consequences of her refusal to submit to the test,

> Refusal to submit to a chemical test of your breath will result in the suspension, denial or revocation of your driver's license whether or not you are found guilty as charged.

and of the fact that she had no right to refuse under *Miranda*. We further conclude that Graham's conduct, in fact, amounted to a refusal to take the test. Thus, we think there is no basis for her argument that she was confused, or her secondary argument that she never actually refused to take the test.

III

Graham's remaining contention is that the district court erred in denying her motion to stay the revocation of her license until the hearing could be held on her application to rescind the Department's action.

Graham first argues that she was entitled to a stay under the provisions of former AS 28.05.074 and 28.05.076.[8] "Unless otherwise specifically provided," those sections provide for an administrative hearing prior to revocation of a driver's license, unless immediate revocation "is necessary for the protection of the health, safety or welfare of the public." AS 28.05.076 also provides for an appeal to the district court to rescind the Department's action, and states that the decision of the Department "is stayed and does not take effect during the pendency of an appeal." AS 28.05.076(b).

■ The state correctly argues that neither of these statutes is applicable to a license revocation based on a refusal to perform a breathalyzer test.

As already noted, the requirements of AS 28.05.074 and 28.05.076 apply only where not "otherwise specifically provided." AS 28.35.032(b) requires immediate revocation of a driver's license, upon receipt of the required documentation of the refusal, without a prior hearing. The same notice that informs the driver of his or her right to initiate a proceeding in the district court must also contain notice that the person's "privilege to operate a motor vehicle *is* revoked or suspended." AS 28.35.032(b) (emphasis added). Thus, we believe, AS 28.35.-

8. Repealed and reenacted as AS 28.05.131 and 28.05.141, by chapter 178, section 6, SLA 1978.

032(b) *specifically provides* for revocation of a license without prior notice and an opportunity to be heard. AS 28.05.074 and 28.05.076, therefore, do not apply.

The second part of Graham's argument is that revocation of her license prior to a hearing violated the due process provisions of the state and federal constitutions.

On September 8, 1977, Graham's attorney moved for a hearing in the district court. His motion, however, stated that it would "be supported by a memorandum which will be filed in conjunction with the trial of the defendant on the charge of [operating a motor vehicle while under the influence of intoxicating liquor] or separately in the event that a trial is not had."[9] In his memorandum in support of that motion, also filed on September 8, counsel asserted his client's right to have the revocation of her license stayed pending the hearing. The state opposed the request for a stay, taking the position that a stay was not a substitute for the hearing contemplated by AS 28.25.032(b)(1)–(3). In his reply to the state's objection, filed on September 14, 1977, Graham's attorney argued that a stay was constitutionally required. He then stated, however:

A hearing in conjunction with the trial is in keeping with simple judicial economy. The trial is only 20 days away. *Why take up the time of the court, the police and the defendant and resulting costs merely to hear what will be heard on October 3 anyway.*

(Emphasis added.)

■■■ It is not disputed that a driver's license constitutes an important property interest which is protected under the state due process clause.[10] We have consistently held that before the state may deprive a person of a protected property interest there must be a hearing, *Etheredge v. Bradley*, 502 P.2d 146 (Alaska 1972); *Frontier Saloon, Inc. v. Alcoholic Beverage Control Board*, 524 P.2d 657 (Alaska 1974), except in emergency situations, as where a debtor is about to transfer or conceal property in order to defraud creditors, *Etheredge v. Bradley*, 502 P.2d at 153, or where "the public health, safety, or welfare require summary action." *Frontier Saloon, Inc. v. Alcoholic Beverage Control Board*, 524 P.2d at 661.

There was here no emergency situation requiring summary action. The suspension of Graham's driving privileges for three months could await the hearing afforded under AS 28.35.032(b) without prejudicing any important state interests.[11]

■■■ Having concluded that Graham did have a constitutional right to a meaningful hearing before the state could suspend her driver's license, we nonetheless believe the actions of her attorney operated to waive that right in the case at bar. Graham's counsel should have either moved for an immediate hearing or, in the alternative, moved for a hearing at the earliest possible time at which a meaningful hearing could be conducted.[12] In conjunction with either alternative, a stay could have been requested, if it was needed. In the absence of such action we are unable to say that Graham was denied due process of law.

AFFIRMED.

9. The criminal charge was dismissed on October 3, 1977.

10. Article I section 7 of the Alaska Constitution provides:

Due Process. No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

11. We acknowledge that *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) reaches a contrary result. However, we are not bound by that decision in construing the due process clause of the Alaska Constitution.

12. A meaningful hearing to resolve the questions which are germane under AS 28.35.032(b) would require the presence of the arresting officer, the production of the report of the arresting officer and any tape recordings, videotapes, or transcripts concerning events surrounding the arrest, and the presence of witnesses having evidence to offer on contested points.

CONNOR, Justice, with whom RABINOWITZ, Chief Justice, joins, dissenting.

Marjorie Graham was arrested at approximately 2:30 a. m. on August 6, 1977 in Kodiak. The arresting officer advised her of her *Miranda* rights [1] and then drove her to the police station. The warning read by police to the arrested individual explains that one has the right to remain silent and that one has the right to counsel before answering any questions. At the police station, Officer Bailey requested that Graham submit to a breathalyzer test. At the time of the request, the officer read the standard "consent to a breathalyzer test" warning. At the conclusion of the implied consent warning, Graham was asked whether she would take the test. She contends that her failure to take the test should not be construed as a refusal because she relied on the statement of her *Miranda* rights which explained that she had the right to remain silent.

The inherent contradictions between the rights mentioned in the *Miranda* warning and the obligations imposed by an implied consent warning, *Wiseman v. Sullivan*, 190 Neb. 724, 211 N.W.2d 906, 909 (1973), have been the subject of a number of decisions in the courts of California. In *Rust v. Department of Motor Vehicles*, 267 Cal.App.2d 548, 73 Cal.Rptr. 366 (1968), Rust was read his *Miranda* rights after he failed a field sobriety test. The officer then requested that he submit to a blood alcohol test. Rust replied that he wished to telephone his attorney first, relying on his understanding of his *Miranda* rights. The court likened the facts in *Rust* to those in *People v. Ellis*, 65 Cal.2d 529, 55 Cal.Rptr. 385, 421 P.2d 393 (1966). In *Ellis*, the police officers advised Ellis of his right to remain silent; then they testified that he refused to participate in a

voice identification test, allowing the jury to draw an adverse inference from his refusal. The court noted that the *Miranda* warnings which Ellis heard did not distinguish between speech for communication and speech for voice identification. Further, "[t]hat distinction would hardly occur to a layman unless it was called to his attention." *Id.* at 398. The court held that since the refusal might have been the result of the misleading police warnings, the refusal could not be used against Ellis. *Id.* See *Calvert v. State*, 184 Colo. 214, 519 P.2d 341, 343 (1974). Applying the same concept of fairness from *Ellis* to the circumstances in *Rust*, the court of appeal required that when a driver expresses a misconception of his *Miranda* rights, by a request for an attorney, the officer "should have qualified his advice" by stating that the right to counsel was inapplicable to the blood alcohol test. 73 Cal.Rptr. at 368.

The majority opinion places the burden on the defendant motorist to establish her confusion before the arresting officer is required to explain that the *Miranda* rights are not applicable to the breathalyzer examination proceedings.[2] Although that holding is consistent with those in a number of jurisdictions, see *West v. Department of Motor Vehicles*, 275 Cal.App.2d 908, 80 Cal. Rptr. 385, 387–88 (1969); *Swenumson v. Department of Public Safety*, 210 N.W.2d 660, 663 (Iowa 1973); *Wiseman v. Sullivan*, 190 Neb. 724, 211 N.W.2d 906, 910 (1973); *State v. Riba*, 10 Wash.App. 857, 520 P.2d 942, 945 (1974), the result does not contribute to legal certainty. When, at the end of the implied consent warning, the motorist's *Miranda* rights are not clarified, the officer may be presented with a difficult decision. Upon refusal by the motorist to take a blood alcohol test, the officer must determine whether that refusal is owing to con-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The majority did not conclude that Graham was confused. After viewing the videotape, I conclude that she was confused. After the officer read her the implied consent warning, she requested that she be allowed to make a telephone call, that someone be present before she consented and she stated that she had

"enough sense not to say a word." At no time did Officer Bailey explain that her right to remain silent and right to an attorney were inapplicable to the breathalyzer examination proceedings. He repeatedly asked her whether she would consent to the breathalyzer test and told her that if she failed to affirmatively consent, she would lose her license.

fusion in understanding the stated rights or stems merely from a knowledgeable refusal. There is no guidance as to what constitutes sufficient evidence of confusion, or whether the sufficiency is tested from the officer's or the motorist's point of view.

Further, the majority's approach does not adequately respond to the conditions surrounding the arrest. An arrest inherently involves interference with one's liberty and thus puts the motorist in uncomfortable circumstances. In addition, the commingling of the *Miranda* warnings and the implied consent statute result "at the very best ... in a high degree of ambiguity." *Wiseman*, 211 N.W.2d at 910. To require that the motorist manifest confusion to the officer before the ambiguity is explained, when in fairness the ambiguity should not exist in the initial warnings, is unjust.[3]

Therefore, I would reverse the decision of the superior court.

---

**3.** The implied consent warning was modified in California in an effort to avoid confusion. In a current form it states:

"You are required by State law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. If you refuse to submit to a test, or fail to complete a test, your driving privilege will be suspended for a period of six months. You do not have the right to talk to an attorney, or have an attorney present, before stating whether you will submit to a test, before deciding which test to take, or during the administration of the test chosen."

See *McDonnell v. Department of Motor Vehicles*, 119 Cal.Rptr. 804, 807 n.1, 45 Cal.App.3d 653 (1975). I would suggest that the warning used in Alaska be modified by adding a qualification that the motorist does not have the right to remain silent to avoid answering whether she understands her rights or whether she will take the exam and a qualification regarding her right to an attorney similar to the one quoted above. I would further modify the instruction to delete the references to a choice among test methods, as AS 28.35.031 provides only for the breath test and not for blood or urine tests.