Harold A. BORREGO, Appellant,

v.

STATE of Alaska, DEPARTMENT OF PUBLIC SAFETY, Appellee.

Nos. S-3837, S-3962.

Supreme Court of Alaska.

July 26, 1991.

---

Phillip P. Weidner, Keenan Powell, Weidner & Associates, Anchorage, for appellant.

James Forbes, Asst. Atty. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

PER CURIAM.

## I. INTRODUCTION

Harold Borrego seeks to have the revocation of his driver's license reversed. Borrego's license was revoked for one year upon an administrative determination that he had been driving while intoxicated (DWI). At about the same time, however, a jury acquitted him on a parallel criminal DWI charge. Following administrative and judicial review, the administrative revocation was affirmed. Borrego then appealed to this court. We affirm.

## II. FACTS AND PROCEEDINGS

### A. *The Arrest*

On August 7, 1988, Harold Borrego was arrested in Bethel for driving while intoxicated. The arrest, made inside the Brass Buckle Roadhouse, was based on information given to the police by a Bethel resident, Leonard Patton, and on their own observations of Borrego.

Patton initially told the police that he had seen Borrego's truck drive up to the Brass Buckle, Borrego get out, and make his way

into the building as if he were drunk. A report later completed by Patton indicated that he did not actually see Borrego leave his vehicle.[1] Based on Patton's initial report to the police, Officers Abrant and Miller went to the Brass Buckle. When they went inside, they saw evidence that Borrego was drunk: he tried to walk up a couple of steps and nearly fell, he walked unsteadily, and he struggled to stay on a bar stool. When they approached him, they found that his speech was slurred, he had alcohol on his breath, and he had bloodshot eyes. One of the officers asked him if he had driven to the disco. Borrego said that he had.[2] Borrego also stated that he had not had anything alcoholic to drink since arriving at the Brass Buckle. When Borrego refused to take a field sobriety test, the officers arrested him for driving while intoxicated.

### B. *The Administrative Proceedings*

After the arrest, Borrego's license was immediately revoked by the Department of Public Safety. Borrego appealed the revocation on August 8, as permitted by AS 28.15.166. It took three hearings before the revocation was finally affirmed in the administrative review process.

The initial hearing was held before a hearing officer on September 21. At that hearing, Mr. Angstman, Borrego's attorney, requested a continuance on the issue of whether the officers had reasonable grounds to believe that Borrego had been operating a vehicle while intoxicated. His reason was that Borrego had filed a motion to suppress all evidence in the criminal DWI case, based on the argument that the officers did not have reasonable grounds to believe that Borrego had driven while intoxicated. The hearing officer granted the continuance.

At the second hearing, held on October 27, Angstman reported to the hearing officer that Borrego's motion to suppress had been denied and that Borrego had been acquitted by the jury. Evidence was then taken on the issues of the reasonableness of arrest and whether or not Borrego had been driving while under the influence.[3] When the hearing officer proposed to read into the record the sworn report of Officer Brunger, which contained the unsworn reports of the arresting officers, Angstman objected. His grounds were basically: 1) only Officer Brunger's report was sworn, 2) Brunger did not have firsthand information of the arrest, and 3) neither of the arresting officers was available at the hearing to testify. After hearing testimony from Brunger,[4] the hearing officer agreed and decided to continue the hearing based on AS 28.15.166(h)[5] to allow the arresting officers to testify personally. Angstman did not object to this ruling.

---

1. Patton's statement reads:

 I, Leonard Patton, while parked in front of the Brass Buckle disco the 7th day of August, 1988, approximately 12:54 [a.m.], I saw a vehicle pull up behind me through my passenger's side mirror, then the lights went out. Then I turned around to my left to see who it was, and Hal Borrego was walking around my truck in a very staggering way. It was very obvious that he had been drinking. When I turned back to see who the person was, *I didn't see anyone else in or near his* little pickup, or anywhere else near the back of my pickup. From what I saw, he was alone. I knew it was him, but to be sure it was him, I called out, "[H]ey, Hal, what's up". He turned to me and said, "Well, I'm going in." He then started staggering his way into *the disco. I then backed out, then headed* towards the police station to report what I had just witnessed.

2. Later, Borrego apparently told another officer, Brunger, that he had *not* been driving.

3. The hearing officer, who had not presided over the first hearing, did not deal with what effect the jury verdict or the court's ruling on the motion to suppress had on the issue at the revocation hearing.

4. Brunger testified that Patton had told him about what Patton had observed outside the Brass Buckle. Angstman objected to this as hearsay. The hearing officer dismissed the objection, saying "[t]hat would not be hearsay, he's recalling his recollection of what he was told by Mr. Patton."

5. This section provides:

 The determination of the hearing officer may be based upon the sworn report of a law enforcement officer. The law enforcement officer need not be present at the hearing unless either the person requesting the hearing or the hearing officer requests in writing before the hearing that the officer be present. If in the course of the hearing it becomes apparent that the testimony of the law en-

At the last hearing, held on November 3, both arresting officers testified telephonically. They described the initial report from Patton, their investigation, and finally their arrest of Borrego. After a final statement by Angstman, the hearing officer affirmed the revocation of Borrego's driver's license.

### C. *The Appellate Proceedings Below*

Borrego filed two separate appeals at the same time: one in district court pursuant to AS 28.05.141(d)[6] and one in superior court pursuant to AS 28.15.166(m).[7]

The district court appeal was dismissed on the state's argument that appeal from a license revocation hearing is to the superior court pursuant to AS 28.15.166(m), not to the district court pursuant to AS 28.05.-141(d). That decision was appealed to the superior court which affirmed.

In the appeal to the superior court from the revocation hearing, the hearing officer's decision was affirmed.

Borrego appeals both decisions of the superior court in one consolidated appeal.

### III. STANDARD OF REVIEW

■ For the questions of law which arise in this appeal, this court applies its own independent judgment. On issues of fact, an administrative agency's determination is reviewed under the substantial evidence test. *See Storrs v. State Medical Bd.*, 664 P.2d 547, 555 (Alaska), *cert. denied*, 464 U.S. 937, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983). This is especially true where the findings of fact were made in a quasi-judicial proceeding. *See State, Alcoholic Beverage Control Bd. v. Decker*, 700

P.2d 483, 486 (Alaska 1985). Under this test, the reviewing court determines whether the findings are supported by such evidence as a reasonable mind might accept as adequate to support a conclusion. *Galt v. Stanton*, 591 P.2d 960, 963 (Alaska 1979).

### IV. DISCUSSION

Borrego claims a number of errors were committed below, both in the administrative hearing and in the subsequent judicial appeals. We find that none of the claims of error has merit. His attorney insisted at oral argument that it was important for us to view these issues as intertwined. But even viewing the events in this case as a whole, we detect no legal error nor any clear injustice.

### A. *Did Borrego Have a Right of Appeal to the District Court Pursuant to AS 28.05.141(d)?*

■ Describing this at oral argument as the central issue of the case, Borrego claims that a person whose license has been revoked for DWI "has the co-existing rights to file an appeal ... in both District and Superior Courts" pursuant to AS 28.-05.141(d) and AS 28.15.166(m) respectively. The state claims that *Graham v. State*, 633 P.2d 211 (Alaska 1981), and basic principles of statutory construction lead to the conclusion that appeal to the district court pursuant to AS 28.05.141(d) is unavailable in DWI revocations.

We agree with the state that *Graham* governs this issue. *Graham* involved a motorist arrested for drunk driving. She refused to take a breathalyzer test, and her license was revoked pursuant to former AS 28.35.032(b). Her appeal to the district

---

forcement officer is necessary to enable the hearing officer to resolve disputed issues of fact, the hearing may be continued to allow the attendance of the law enforcement officer.

**6.** This section provides:

A person aggrieved by the decision of the hearing officer may ... initiate a proceeding in district court to rescind the department's action.... The court shall conduct a hearing de novo. The decision of the department ... revoking ... a license ... is stayed and does not take effect until the pendency of an appeal.

**7.** This section provides:

Notwithstanding AS 28.05.141(d) ... a person aggrieved by the determination [of the department of Public Safety] may file an appeal in superior court for judicial review of the hearing officer's determination. The judicial review shall be on the record, without taking additional testimony. The court may reverse the department's determination if the court finds that the department misinterpreted the law, acted in an arbitrary and capricious manner, or made a determination unsupported by the evidence in the record.

court for a stay of the revocation was denied. *Graham*, 633 P.2d at 212–13. On appeal, we rejected her argument that she was entitled to a stay under the provisions of former AS 28.05.076. *Id.* at 215–16. We noted that this last provision had been repealed *and reenacted* as AS 28.05.141— the very provision upon which Borrego now relies as a basis for appealing to the district court. *Id.* at 215 n. 8. We concluded that AS 28.05.076 was inapplicable to a license revocation based on a refusal to perform a breathalyzer test. *Id.* at 215–16. It follows that the current version of AS 28.05.076, *i.e.,* AS 28.05.141, is likewise inapplicable to license revocations for refusal to submit to a breathalyzer test.[8]

We also find persuasive the state's statutory construction arguments. Not only do the locations of the various appeal provisions suggest that AS 28.15.166(m) governs in cases of DWI revocations, but so does the language of AS 28.15.166(m). By its own terms, § 166(m) applies "[n]otwithstanding AS 28.05.141(d)." Borrego interprets this to provide an additional avenue of appeal. This makes little sense. Since AS 28.05.141(d) provides for an automatic stay of the revocation, all aggrieved parties would choose that path, and thus AS 28.15.-166(m) would be superfluous. Moreover, allowing appeals under both provisions would result in duplicative appeals and needless waste of judicial resources.

B. *Did the Disposition of the Criminal DWI Charge Collaterally Estop the State from Finding that the Arresting Officers Had Reasonable Grounds to Believe that Borrego Had Been Driving While Intoxicated?*

■ Borrego argues that the jury's finding of not guilty on the DWI charge barred

the hearing officer from finding that the initial stop of Borrego was lawful. Citing *Avery v. State*, 616 P.2d 872, 873–74 (Alaska 1980), the state maintains that "[s]ince the standard of proof in a criminal action is entirely different from that in a civil licensing action ... an acquittal on criminal charges is not binding on parallel proceedings that are civil in nature."

We agree that *Avery* controls the issue of collateral estoppel in this case. *Avery* was a parolee who was acquitted on a criminal charge of being a felon in possession of a firearm. However, the parole board revoked his parole on that very ground. When Avery challenged his parole revocation on appeal, we held that "[c]ollateral estoppel does not apply because adjudication of charges on the beyond a reasonable doubt standard does not constitute an adjudication on the preponderance of the evidence standard." *Id.* at 874. *Avery* makes it clear that the administrative revocation of Borrego's driver's license is not barred by his acquittal on DWI charges.[9]

C. *Was Borrego Denied Due Process in the Administrative Hearing?*

■ Borrego's main claim here is, in essence, that the hearing officer who affirmed the license revocation was biased because he "prosecuted" the case against Borrego. According to Borrego, the hearing officer had "rested his case" on the sworn report of Officer Brunger and then "reopened" it in order to get the testimony of the arresting officers. He also claims that the hearing officer "openly engaged defense counsel in argument on behalf of

---

8. Currently, AS 28.15.165 governs license revocations for refusal to submit to a chemical sobriety test. In 1983, AS 28.15.165 essentially replaced AS 28.35.032(b), the provision under which Graham's license was revoked. Ch. 77, §§ 3, 25 SLA 1983.

9. We also note that, aside from the differing burdens of proof at the criminal trial and the administrative hearing, there was another difference in the issues decided at these proceedings. The issue before the jury was whether

Borrego *actually* operated his vehicle under the influence. AS 28.35.030(a). Yet, as Borrego himself states, the issue before the hearing officer was "whether the officer[s] had reasonable grounds to believe [Borrego] was driving while intoxicated." *See* AS 28.15.166(g). Thus, the first requirement for collateral estoppel, that the issue decided in the prior adjudication was "precisely the same," has not been met. *See Briggs v. State, Dep't of Pub. Safety*, 732 P.2d 1078, 1081 (Alaska 1987).

the state throughout the proceedings." According to the state, the hearing officer was merely trying to get all the evidence, a job which requires a more active role since the state is not represented in revocation hearings.

The fact that the hearing officer asked various questions throughout the proceedings does not indicate bias. *Thorne v. State, Dep't of Pub. Safety,* 774 P.2d 1326, 1333 (Alaska 1989). And while the hearing transcript reveals some disagreements between the hearing officer and defense counsel, this certainly does not mean there was bias, particularly in light of the fact that Borrego's concerns were often heeded.[10] A fair reading of the hearing transcript suggests that the hearing officer was simply concerned with getting at the facts. We perceive no bias.

Borrego also claims that the hearing officer based his conclusion on inadmissible evidence, thus violating Borrego's due process rights. This argument is meritless as the hearing officer ultimately based his decision on direct testimony from the arresting officers and a written report by Patton, an eyewitness. Neither the direct testimony nor the written report were inadmissible.

Borrego further complains about the hearing officer's continuance of the hearing to allow the direct testimony of the arresting officers. However, Borrego did not object to this procedure. Moreover, the continuance was in response to an objection by Borrego. Thus, it was not a "reopening" of the case, as Borrego claims, since the case was never closed. Finally, such a continuance is expressly allowed under AS 28.15.166(h).[11]

### D. Was There Substantial Evidence that the Officers Had Reasonable Grounds to Believe that Borrego Drove While Intoxicated?

■ Borrego claims that the evidence presented at the revocation hearing failed to establish that the officers had reasonable grounds to believe that Borrego had driven his vehicle while intoxicated. Specifically, Borrego seems to argue that there was insufficient evidence that he drove his pickup truck. The state maintains that the substantial evidence test is easily met in this case.

Borrego contends on various grounds that his statement to the officers in the Brass Buckle that he had driven there does not support the hearing officer's conclusion. But even aside from Borrego's statement, there was enough evidence to reasonably believe that Borrego had driven his vehicle there. This evidence is found in Patton's written statement. First, Patton's statement reveals that he saw Borrego's pickup pull up behind Patton's vehicle. Thus, it is clear that *somebody* drove the pickup just before Patton observed Borrego stumble his way into the Brass Buckle. Second, Patton positively identified Borrego, who was approaching from near the pickup. Third, Patton looked at the pickup and saw no one else in or near it. It was therefore reasonable to conclude that Borrego drove the pickup to the Brass Buckle. Since Borrego does not contest that he was drunk at the time, Patton's report *alone* gave the officers reasonable grounds to believe that Borrego had been driving while intoxicated.[12] There is certainly substantial evidence supporting the hearing officer's decision.

**10.** For example, the first hearing officer granted Borrego's request for a continuance, and the second hearing officer agreed that he could not rely on Officer Brunger's sworn report which discussed things about which Officer Brunger had no personal knowledge.

**11.** *See supra* note 5. Borrego claims that the reasonableness of the initial stop is not an issue of fact. Yet clearly the reasonableness of the initial stop depends on the facts of the case (to

which only the arresting officers could testify). Thus, it was appropriate for the hearing officer to continue the hearing to allow them to testify.

**12.** The fact that Patton's final, written report differed from his initial report does not change our conclusion. On the contrary, Patton probably first reported that he had seen Borrego drive up to the Brass Buckle because it was such a logical inference from what he had observed.

### E. *Borrego's Other Constitutional Claims*

Finally, Borrego attacks the appeal procedure set forth in AS 28.15.166(m) as a violation of equal protection and as overly broad and vague. As these issues were not properly raised below, we decline to address them now.[13]

## V. CONCLUSION

Both decisions of the superior court are AFFIRMED.

---

**13.** In Borrego's Statement of Points on Appeal to the superior court, he did allege violations of equal protection. However, he did not raise the *same* equal protection claim below that he urges on appeal now. As for his claim that AS 28.15.-166(m) is overly broad and vague, these theories were not advanced in either of his appeals to the superior court. None of these arguments, therefore, was ever properly before the superior court, *see* Appellate Rule 602(b)(1)[a], and thus they cannot be raised on appeal to this court for the first time.