**Tariq JAVED, Appellant,**

v.

**DEPARTMENT OF PUBLIC SAFETY,
DIVISION OF MOTOR VEHICLES,
State of Alaska, Appellee.**

No. S–6296.

Supreme Court of Alaska.

July 26, 1996.

---

**3.** To the extent necessary I would overrule *Breeze* *v. Sims*, 778 P.2d 215 (Alaska 1989).

Charles W. Coe, Anchorage, for Appellant.

Eric A. Johnson, Dianne Olsen, Assistant Attorneys General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS and EASTAUGH, JJ., and CARPENETI, J. Pro Tem.*

*OPINION*

MATTHEWS, Justice.

On September 12, 1992, Anchorage Police Officers Culbreth, Dash, and Norsworthy responded to a complaint concerning a disturbance at 3800 Arctic Boulevard. Upon arriving, they found Tariq Javed tied to a post on the property. Javed appeared to be intoxicated. The officers interviewed the three other citizens present.

Chevelle Carrington told Officer Culbreth that she was driving on 36th Avenue when Javed pulled up next to her and began to flirt with her. She said that Javed cut her off twice and followed her into the parking lot at 3800 Arctic. She said that he then got out of the car, yelled at her, and drove off, only to come back to the parking lot on foot a few minutes later.

Officer Culbreth also interviewed Donald Thompson. Thompson stated that he saw Javed yell at Carrington, drive away, and then return.

Officer Dash interviewed Jerome Workman. Workman said that Javed parked his car in the parking lot at 3800 Arctic, got out of his car, and began harassing Carrington. Workman stated that he told Javed to leave. Workman stated that Javed parked his car across the street and walked back to the property.[1] Workman said that he then detained Javed and placed him under citizen's arrest.

The police officers arrested Javed for trespass and driving while intoxicated (DWI). Javed admitted drinking but repeatedly denied driving. The officers searched Javed but did not find any car keys. An intoximeter test showed that Javed's blood alcohol level was above the legal limit.

In the license revocation proceedings, Javed's defense was that he had not been driving. According to Javed, he had become intoxicated while visiting the home of a friend, Muhammad Malik. Malik started to drive Javed home in Javed's car. Malik and Javed got into an argument near 36th Avenue and Arctic. Malik parked the car, took Javed's keys, and walked away. Javed walked into the parking lot at 3800 Arctic, where he became involved in an altercation with Carrington, Thompson and Workman, who ultimately tied him to a post. Malik testified at the revocation proceedings, corroborating Javed's testimony.

Javed's license revocation proceedings were broken up into three hearings. Officers Culbreth and Dash testified, over repeated objections by Javed, about the statements made to them by Carrington, Thompson, and Workman. A written statement by Work-

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. According to Javed's testimony at the license revocation hearing, Workman testified at the criminal trial that he did not see Javed park the car. Javed was acquitted at a jury trial of driving while intoxicated.

man and written reports describing the statements made by Carrington, Thompson, and Workman were included in Officer Dash's arrest report, which was part of the record before the hearing officer. Javed requested that all witnesses be subpoenaed. After the second hearing, the hearing officer subpoenaed the civilian witnesses. The testimony of the civilian witnesses was never taken at the third hearing, however, because Carrington and Thompson arrived late, after the hearing had been closed, and Workman did not appear at all.

The hearing officer affirmed the license revocation, stating, "The law does not require the officer [to] see the person drive, only to have reasonable grounds to believe that the person drove. I believe reasonable grounds exist in this situation." Javed appealed to the superior court, which affirmed without opinion. Javed then appealed to this court.

In his briefing, Javed asserted essentially that the hearing officer improperly relied upon hearsay evidence and denied him the right to confront and cross-examine witnesses. The State argued that the hearing officer found substantial evidence that the arresting officers had reasonable grounds to believe that Javed had been driving, and that the revocation was therefore lawful.

This court *sua sponte* ordered supplemental briefing to address the following issues:

(1) Where the accused at an administrative license revocation hearing has presented evidence that he did not drive, does the due process clause of the Alaska Constitution permit the hearing officer to suspend the driver's license of the accused without finding that a preponderance of admissible evidence shows that the accused actually drove or operated his vehicle?

(2) If due process does require the hearing officer to find that the accused actually drove, is AS 28.15.166(g) [limiting the scope of the hearing to whether the officer had reasonable grounds to believe the accused was DWI] unconstitutional? Or can the constitutionality of AS 28.15.166(g) be saved by construing it to permit an inquiry by the hearing officer into whether the accused actually drove? If AS 28.15.166(g) is given such a saving construction, what

sort of inquiries will it continue to prohibit?

(3) If AS 28.25.166(g) is unconstitutional, is it severable from the rest of AS 28.15.166?

Having considered the initial and supplemental briefs of the parties we conclude as follows: (1) where there is an issue as to whether the accused was driving, due process requires an inquiry into that issue before the driver's license of the accused may be suspended; (2) as written, AS 28.15.166(g) prohibits such an inquiry; (3) the limiting language in AS 28.15.166(g) is therefore unconstitutional as applied to cases where there is an issue as to whether the accused was driving; and (4) as the hearing officer did not consider the question whether Javed was driving, this case must be remanded for a new hearing at which that issue must be addressed.

*Due Process Requires an Inquiry into Whether a Licensee Was Actually Driving a Vehicle before a Driver's License May Be Suspended.*

 A driver's license represents an important property interest which is protected under the due process clause of the Alaska Constitution. *Haynes v. State, Dep't of Public Safety,* 865 P.2d 753, 756 (Alaska 1993); *Graham v. State,* 633 P.2d 211, 216 (Alaska 1981). We have held that licensees are entitled to a "meaningful hearing" before their driver's licenses may be revoked or suspended. *Graham,* 633 P.2d at 216.

 In examining whether a hearing is a meaningful one, we are guided by "considerations of fundamental fairness." *Thorne v. State, Dep't of Public Safety,* 774 P.2d 1326, 1329 (Alaska 1989) (quoting *Whisenhunt v. State, Dep't of Public Safety,* 746 P.2d 1298, 1300 (Alaska 1987)). For example, the denial of an opportunity at an administrative revocation hearing to challenge the reliability and credibility of the breath test operates as a denial of a meaningful and fundamentally fair hearing. *Champion v. State, Dep't of Public Safety,* 721 P.2d 131, 133 (Alaska 1986) (holding failure to take reasonable steps to preserve breath sample violates due process).

We have written that a meaningful hearing "would require the presence of the arresting officer, the production of the report of the arresting officer and any tape recordings, videotapes, or transcripts concerning events surrounding the arrest, and the presence of witnesses having evidence to offer on contested points." *Graham*, 633 P.2d at 216 n. 12. Also, in order for results of a breath test to be admissible at an administrative revocation hearing, the State must preserve the breath test sample or give the driver an opportunity to obtain an independent test, *Briggs v. State, Dep't of Public Safety*, 732 P.2d 1078, 1080 (Alaska 1987), and the driver must be given a reasonable opportunity to consult with an attorney before being required to take the test, *Whisenhunt v. State, Dep't of Public Safety*, 746 P.2d 1298 (Alaska 1987).

We emphasized that driving is an important privilege which commands meaningful safeguards in *Whisenhunt,* where we extended criminal procedural safeguards to the administrative revocation context. 746 P.2d at 1298. We noted that in DWI cases, "license revocation is often the most important and long-lasting sanction imposed on the defendant.... Driving is such an important privilege in our society that license revocation alone can reasonably be regarded as a significant sanction." *Id.* at 1299. We have thus rejected a formal distinction between civil and criminal proceedings when considerations of fundamental fairness are involved. *Id.* at 1300; *Champion*, 721 P.2d at 133.

Alaska Statute 28.15.165 requires the administrative revocation of driver's licenses by the Department of Public Safety for drivers who fail a chemical sobriety test or who refuse to submit to such a test. Alaska Statute 28.15.166 allows administrative review of such a revocation. Subsection (g) of AS 28.15.166 limits the scope of the hearing officer's inquiry at a revocation proceeding:

> The hearing for review of action by the department under AS 28.15.165 shall be limited to the issues of whether the law enforcement officer had reasonable grounds to believe that the person was operating a motor vehicle or commercial motor vehicle that was involved in an acci-

dent causing death or serious physical injury to another, or that the person was operating a motor vehicle, commercial motor vehicle, or aircraft while intoxicated in violation of AS 28.33.030 or AS 28.35.030 and whether

> (1) the person refused to submit to a chemical test authorized under AS 28.33.031(a) or AS 28.35.031(a) or (g) after being advised that refusal would result in disqualification or the suspension, revocation, or denial of the person's license, privilege to drive, or privilege to obtain a license, and that the refusal is a misdemeanor;

> (2) the chemical test administered under AS 28.33.031(a) or AS 28.35.031(a) or (g) produced a result described in AS 28.35.030(a)(2); or

> (3) the chemical test administered under AS 28.33.031(a) produced a result described in AS 28.33.030(a)(2).

Javed's argument is simple and persuasive: a hearing which is statutorily limited to the reasonableness of the arresting officer's beliefs at the time of arrest is not necessarily meaningful or fundamentally fair. Revocation is not fair if the accused can demonstrate that he was not driving, regardless of the reasonable beliefs of the arresting officer.

We noted in *Thorne* that the accused at a revocation hearing "must be granted the opportunity to fully contest issues of 'central importance' to the revocation decision." 774 P.2d at 1331 (quoting *Champion*, 721 P.2d at 133). In *Thorne,* that meant that the State had the duty to preserve a videotape of the accused performing sobriety tests so that Thorne could contest whether the arresting officer had reasonable grounds to believe he had been DWI. 774 P.2d at 1331–32.

It is hard to imagine an issue of more "central importance" to a driver's license revocation hearing than whether the person accused of DWI was driving a vehicle in the first place. Intoxication alone may not justify the revocation of a driver's license. The State concedes that where a licensee takes and fails a breath test, "it would be irrational to revoke his license unless he was in fact driving when he was arrested."

Yet this is precisely what might happen where the evidence that the arrestee was driving is examined only from the perspective of the arresting officer at the time of the arrest. It is plausible that an officer might have unquestionably reasonable grounds to believe that a person was driving, but evidence presented by the arrestee later demonstrates that the officer was mistaken. Under the terms of AS 28.15.166(g), the later evidence may not be considered, and the license of a person who was not driving will be suspended.

■ Due process requires that an arrestee who fails a breath test must be afforded the opportunity at an administrative revocation hearing to present evidence that he was not driving in order to make that hearing meaningful and fundamentally fair.[2]

This court has previously implicitly allowed inquiries outside the literal scope of subsection .166(g) when due process required them. See Champion, 721 P.2d at 133 (allowing driver opportunity to test credibility of breathalyzer); Whisenhunt, 746 P.2d at 1299 (excluding test results where right to consult attorney violated); Graham, 633 P.2d at 216 n. 12 (holding that meaningful hearing requires presence of witnesses having evidence to offer on contested points). These cases generally assume that the inquiries will help to determine that a person who is accused of driving while intoxicated was actually intoxicated. But it is equally important to ensure a meaningful hearing where the person claims not to have been actually driving.

### Alaska Statute 28.15.166(g) Prohibits an Inquiry into Whether the Accused Was Driving.

The State argues that this court should construe subsection .166(g) in a way that would save its constitutionality and allow an inquiry into whether the arrestee actually drove. We believe that to do so would impermissibly rewrite the statute.

The substance of the State's argument is two-fold: first, that the legislature did not intend the restricting language of subsection .166(g) to apply to revocation proceedings where the arrestee took and failed a breath test; second, and alternatively, that the reference in subsection .166(g) to the implied consent statutes, AS 28.33.031(a) and AS 28.35.031(a) and (g), requires an inquiry into whether such consent was actually given, which in turn might require an inquiry into whether the person actually drove.

The first line of analysis offered by the State fails. The State cannot point to any evidence that the legislature intended the limitation not to apply when it amended the statute in 1983 to include failure of a breath test as grounds for license revocation. See ch. 77, § 3, SLA 1983. It boldly speculates that "the legislature *must* have intended to alter this limitation" and concludes that "nothing other than mere inadvertence can explain the legislature's failure to require proof of this fact [that the person was the driver]."

■ Yet even if this tenuous supposition is correct, we can find no textual basis for a reading which could allow an inquiry into whether a person drove. The statute is clear: the scope of the hearing is limited to (1) whether the officer had reasonable grounds to believe that the person was DWI, and (2) whether the person either refused to take a breath test or took a breath test and failed it. AS 28.15.166(g). We cannot interpret an inquiry expressly limited by statute to the reasonableness of an officer's beliefs to include an examination of the objective truthfulness of the officer's conclusion.

The State's second suggested reading fares no better. The suggestion is that the statute limits the scope of the hearing to whether the

---

**2.** The State, as noted, essentially concedes as much. The bulk of the State's argument addresses the question of whether due process requires an inquiry into whether the arrestee was actually driving in cases where the arrestee refuses to take a breath test. The State suggests that the answer is no, and that the implied consent statutes are triggered not by the act of driving a vehicle, but by mere possession of a license. We note that the Alaska Court of Appeals has rejected this argument in *Patterson v. Municipality of Anchorage*, 815 P.2d 390, 393–94 (Alaska App. 1991). That question is not before us now since Javed took and failed a breath test, and we offer no resolution of it here.

officer had reasonable grounds to believe that the person was DWI and to whether the person refused to take a test "authorized under" the implied consent statutes or the person submitted to a test "administered under" the implied consent statutes. The statute might, then, be read in such a way as to include an inquiry into whether the implied consent statutes were actually triggered, i.e., whether the test given or refused was actually administered or authorized under those statutes. If a person who is not driving has not impliedly consented to such a test, then an inquiry into whether the test was authorized under the implied consent statutes could include in its scope whether the person was actually driving.

We accept for purposes of this argument that, under the implied consent statutes, a person may be deemed to have consented to a test only by actually driving.[3] However, the State's argument fails in its interpretation of subsection .166(g) itself. The focus of subsection .166(g)(1)-(3) is clearly on the result of the test or the fact of refusal to take the test. Reading subsection .166(g)(1)-(3) to encompass an inquiry into the underlying facts that justify administration of the test would render the first part of subsection .166(g), regarding the issue of whether the law enforcement officer had reasonable grounds to believe that the person was operating a motor vehicle, almost meaningless. The statute offers very precise limiting lan-

guage for the issues that are to be considered. There is no reason to believe that the reference to the implied consent statutes is anything more than a descriptive tool used to identify the "chemical test" named in each instance.[4]

Thus, we conclude that AS 28.15.166(g) cannot be interpreted constitutionally.

### Alaska Statute 28.15.166(g) Is Unconstitutional as Applied.

A statute may be unconstitutional either on its face or as applied. *See Gilmore v. Alaska Workers' Compensation Bd.*, 882 P.2d 922, 929 n. 17 (Alaska 1994). A statute is facially unconstitutional if "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). In most cases the issues set forth in subsection .166(g) are the only issues that need to be determined in order to review the revocation decision. Since AS 28.15.166(g) can be applied constitutionally in many circumstances, it is not facially unconstitutional. To use the terms of the statutory saving clause, AS 01.10.030,[5] the application of the limiting language in the act is only invalid under circumstances in which due process requires that other contested issues be established; in the absence of such circumstances

**3.** The State offers this argument in the alternative to its primary argument, which is that a driver's license may be revoked for failure to submit to the breath test even where the arrestee was not in fact driving. *See supra* note 2. Again, we offer no opinion on this issue.

**4.** We recognize that the Oregon Supreme Court reached an opposite conclusion in *Hilton v. Motor Vehicles Div.*, 308 Or. 150, 775 P.2d 1378 (1989). According to that court's interpretation, former ORS 482.541 limited the scope of the hearing to whether the officer had reasonable grounds to believe the licensee was DWI, and whether the licensee either refused or failed the test "under ORS 487.805," the implied consent statute. The court held that an inquiry into whether a person failed a test "under" the implied consent statute included a threshold inquiry into whether the person had actually consented to a test by driving. *Id.*, 775 P.2d at 1380–81. Thus, the court was able to avoid the due process question. *Id.* at 1380.

While we believe that the Oregon court may have given unjustifiable emphasis to a descriptive term in looking at the phrase "the test under ORS 487.805," that case is also distinguishable by the relative ambiguity of the Oregon statute. That statute limited the scope of the hearing to whether the suspension was "valid as described in this subsection," 775 P.2d at 1380; that subsection allowed revocation where the person "refused the test under ORS 487.805." Thus the statute's limitation was significantly less explicit than Alaska's.

**5.** Alaska Statute 01.10.030 provides:
Any law heretofore or hereafter enacted by the Alaska legislature which lacks a severability clause shall be construed as though it contained the clause in the following language, "If any provision of this Act, or the application thereof to any person or circumstance is held invalid, the remainder of this Act and the application to other persons or circumstances shall not be affected thereby."

all of the language of the act may be given application.

The decision of the superior court is RE-VERSED and REMANDED with instructions to remand to the Department for a new hearing which will include an inquiry into whether Javed was driving.[6]

---

**6.** Javed's original briefing to this court advanced issues of hearsay and confrontation of witnesses. In view of the need for a new hearing, we find it unnecessary to address those issues as they will not necessarily be duplicated at the new hearing.