**Lamar PATTERSON, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

**No. A–3660.**

Court of Appeals of Alaska.

Aug. 2, 1991.

---

**2.** *See, e.g.,* AS 11.81.320 (necessity); AS 11.81.- 440 (duress); AS 11.81.450 (entrapment).

Stuart G. Ross, Gorton & Oberly, Anchorage, for appellant.

Michael R. Stahl, Asst. Mun. Prosecutor, and Richard L. McVeigh, Mun. Atty., Anchorage, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Lamar Patterson was originally charged with driving while intoxicated (DWI), driving while license revoked (DWLR), and refusal to submit to a chemical test of his breath (refusal). Prior to trial, the prosecution dismissed the DWI and DWLR charges; Patterson was tried and convicted on the refusal charge. On appeal, Patterson contends that the district court erred in refusing to instruct the jury that the prosecution was required to prove that Patterson was driving when he was arrested for DWI. We reverse.

The relevant facts are undisputed. A van containing Patterson and several other people backed out of an icy driveway in Anchorage and hit a passing car. The occupants of the van, including Patterson, got out. Patterson appeared to be intoxicated. The police were summoned.

When Officer Dennis Gum arrived at the scene, he learned from a bystander that Patterson had gotten out of the driver's side of the van. Gum spoke with Patterson, who claimed that his wife had been driving. After speaking with other witnesses and conducting a brief inspection of the accident scene, however, Gum decided that Patterson had been driving and arrested him for DWI and DWLR. Following his arrest, Patterson refused to submit to a breath test; the refusal charge was then added to the charges of DWI and DWLR.

Immediately before Patterson's trial, the prosecution dismissed the DWI and DWLR charges because it believed that it would be unable to prove beyond a reasonable doubt that Patterson was driving on the night of his arrest. Patterson proceeded to trial on

the refusal charge. At trial, he proposed an instruction informing the jury that, to establish the crime of refusal, the prosecution was required to prove, among other things, that Patterson had been driving. District Court Judge William H. Fuld declined to give the proposed instruction and precluded Patterson from defending against the refusal charge on the ground that he had not been driving.

Patterson challenges the trial court's ruling, arguing that he was under no legal duty to submit to a breath test unless he had actually operated a motor vehicle. Patterson was convicted of violating Anchorage Municipal Code (AMC) 09.28.022C, which provides:

> Refusal to submit to the chemical test of breath authorized by AMC 09.28.021A is a misdemeanor.

This provision hinges criminal liability for refusing to submit to a test on the provisions of the municipality's implied consent ordinance, AMC 09.28.021A. The implied consent provision, in turn, extends the duty to submit to a breath test only to "[a] person who operates, drives or is in actual physical control of a motor vehicle....":

> A person who operates, drives or is in actual physical control of a motor vehicle within the municipality or who operates an aircraft as defined by AMC 09.28.-020E.1 or who operates a watercraft as defined by AMC 09.28.020E.2 shall be considered to have given consent to a chemical test or tests of his or her breath for the purpose of determining the alcoholic content of his or her blood or breath if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating, driving or in actual physical control of a motor vehicle or operating an aircraft or a watercraft while intoxicated. The test or tests shall be administered at the direction of a law enforcement officer who has reasonable ground to believe that the person was operating, driving, or in actual physical control of a motor vehicle or operating an aircraft or a watercraft in the municipality while intoxicated.

Despite the express wording of the implied consent ordinance, the trial court in this case ruled that the question of whether Patterson had been driving was relevant only to the issue of the lawfulness of his arrest for DWI and that, on this score, the municipality was obligated only to show probable cause to support the conclusion that Patterson had been driving. In reaching this conclusion, the court apparently relied on the latter part of the ordinance, which empowers a breath test to be administered by an officer "who has reasonable ground to believe that the person was operating, driving, or in actual physical control of a motor vehicle...."

■ The trial court correctly recognized that a lawful arrest for DWI—that is, one based on probable cause—was a prerequisite to the admission of evidence of Patterson's refusal to submit to a chemical test. If Gum had lacked probable cause to arrest Patterson, he would not have been entitled to administer a breath test under AMC 09.28.021A. In the absence of probable cause, Patterson would have been entitled to have evidence of his refusal suppressed, regardless of whether he had actually been driving or intoxicated. *See Skuse v. State*, 714 P.2d 368, 372 (Alaska App. 1986). The issue of probable cause for arrest was properly a question of law for the trial court to decide and was not an element of the offense to be submitted to the jury. *See Brown v. State*, 739 P.2d 182, 187 (Alaska App.1987); *Skuse*, 714 P.2d at 372.

■ Although Judge Fuld properly recognized the need for the court to resolve the issue of probable cause as a question of law, his ruling went further; the judge went on to rule that the question of whether Patterson was driving could be considered only in connection with the issue of probable cause. To this extent, the district court's ruling confused an officer's authority to request a DWI arrestee to take a test with the arrestee's duty to submit. In contrast to the legal question of whether Gum acted properly in requesting Patterson to submit to a breath test, the issue of whether Patterson had a duty to take the

test once requested (and whether he breached this duty by refusing) is a question of fact amounting to a basic element of the crime charged. Under AMC 09.28.-022C, Patterson could be held criminally liable only for refusing to take a test as required under AMC 09.28.021A. Under the plain language of AMC 09.28.021A, implied consent triggers the obligation to submit to a test; and implied consent arises only from the conduct of operating, driving, or being in actual physical control of a motor vehicle. Patterson's duty to submit to a breath test thus hinged on whether he operated, drove, or was in actual physical control of his van.

The municipality nevertheless contends that this court's opinion in *Brown v. State*, 739 P.2d 182 (Alaska App.1987), holds that driving is not an element of the offense of refusal to submit to a chemical test. We disagree. Brown was convicted of refusal under a state statute, AS 28.35.032(f), which is essentially identical to AMC 09.28.-022C. Brown conceded that he had been driving but denied being intoxicated. He appealed the denial of his motion for a judgment of acquittal, which was based on the assertion that the state did not prove that he drove while intoxicated.

In deciding *Brown*, we described the issue as follows:

> Brown asks us to hold that a person cannot be found guilty of refusing to submit to a breathalyzer examination unless a jury first finds beyond a reasonable doubt that he operated a motor vehicle under the influence of intoxicating liquor. In other words, Brown argues that it is improper to have a jury acquit on the driving while intoxicated charge and nevertheless return a guilty verdict on a refusal charge.

*Id.* at 183 (citation and footnote omitted).

We rejected Brown's argument. We held:

> [I]n order to convict a person of refusing to submit to a chemical test of his or her breath, the state must prove that the individual in question knew or perhaps should have known that the breath test was sought as evidence in connection with an investigation of his or her driving while intoxicated, and, second, that with that culpable mental state, he or she declined the test. Consequently, the trial court did not err in refusing to instruct the jury that it must find that Brown operated a motor vehicle while under the influence of intoxicating liquor as a condition prerequisite to convicting him of refusal to provide a chemical test of his breath.

*Id.* at 186.

The municipality reads the foregoing passage from *Brown* as setting forth an exhaustive list of the elements of the crime of refusal. This reading, however, is mistaken. In *Brown*, we recited the elements of refusal in the context of a defendant who acknowledged that he operated a motor vehicle. In deciding *Brown*, this court did not purport to consider whether driving, operation, or physical control of a motor vehicle should be an element of the offense of refusal.

■■■ Unlike the situation in *Brown*, proof that a person who has been requested to submit to a breath test was actually driving, thereby impliedly consenting to a test, is a direct element of the offense of refusal, not merely an element of the related offense of DWI. As we have indicated, the gravamen of the offense is the refusal to submit to a breath test that one has impliedly consented to take; implied consent is given by the act of driving, operating, or being in actual physical control of a motor vehicle.

Given the plain language of AMC 09.28.-021A, which bases implied consent on actual control of a motor vehicle, there seems to be little basis for extending implied consent beyond situations involving actual control. Implied consent has often been regarded as a legal fiction. The concept is fictitious in the sense that one who drives does not actually consent to submit to a breath test, and the act of driving is not one from which such consent could logically be inferred. To our knowledge, however, this legal fiction has always been predicated on the act of driving, operation, or control; it has never been triggered by

the mere appearance—that is, objectively-based probable cause—that the defendant was driving.

Moreover, requiring the prosecution to prove driving or actual control would in no way conflict with the concerns that led us to decide in *Brown* that the prosecution need not prove intoxication as an element of refusal. The primary purpose of the implied consent doctrine and the related mandatory breath test requirement is to enable the government to preserve valuable evidence of a driver's intoxication. By attaching the same penalties to refusal that apply to DWI, the legislature sought to eliminate any incentive for an arrestee to decline a breath test in order to evade conviction for DWI. This legislative purpose would obviously be frustrated if the prosecution were required to prove not only the elements of refusal, but also that the arrestee was intoxicated: faced with the choice of submitting to a breath test and being convicted of DWI, or refusing and being convicted of refusal, an arrestee would have a strong incentive to choose refusal, since the refusal would hamper not only the prosecution's efforts to prove DWI but also its ability to convict for the refusal.

In contrast, requiring the prosecution to prove that a person charged with refusal was actually driving does not frustrate the basic purpose of the refusal statute. Refusing to submit to a breath test does nothing to weaken the prosecution's case on the issue of whether an arrestee was driving. Nor does a refusal facilitate an arrestee's ability to establish that he was not driving. Requiring the prosecution to prove driving as an element of refusal gives DWI arrestees no added incentive to refuse breath tests.

We thus conclude that proof of a defendant's driving, operation, or actual physical control of a motor vehicle is a necessary element of the offense of refusal to submit to a breath test under AMC 09.28.022C. The trial court in this case erred in reaching a contrary conclusion and in precluding Patterson from arguing, in defense to the charge of refusal, that he had not actually driven.

The conviction is REVERSED.[1]

1. Our reversal of Patterson's conviction makes it unnecessary for us to consider Patterson's remaining claims.