NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JOSEPH E. LADICK,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12205
Trial Court No. 3PA-13-1977 CR

O P I N I O N

No. 2597 — May 4, 2018

Appeal from the Superior Court, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Megan R. Webb, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Nancy R. Simel, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

This case requires us to construe Alaska's "implied consent" statute, AS 28.35.031(a), and to revisit our decision in *Patterson v. Anchorage*, 815 P.2d 390 (Alaska App. 1991).

Under AS 28.35.031(a), a motorist — that is, "a person who operates or drives a motor vehicle in this state" — is required to submit to a breath test if they are lawfully arrested for an offense that "aris[es] out of acts alleged to have been committed while the person was operating or driving a motor vehicle ... while under the influence of an alcoholic beverage, inhalant, or controlled substance".  It is a crime for a motorist to refuse to take a breath test authorized by this statute. [1]

In *Brown v. State*, 739 P.2d 182, 185-86 (Alaska App. 1987), this Court held that when the government prosecutes a person for breath-test refusal, the government does not have to prove that the person was in fact under the influence at the time they were arrested and they were asked to take the breath test.

But in *Patterson v. Anchorage*, 815 P.2d at 392-94, this Court held that when the government prosecutes a person for breath-test refusal, the government must prove that the person was in fact driving or operating a motor vehicle.  In other words, even though a person can be lawfully arrested based on *probable cause* to believe that they were driving a motor vehicle while under the influence, if the government later prosecutes that person for breath-test refusal, the government must prove beyond a reasonable doubt that the person *was in fact* driving or operating the motor vehicle.

(*Patterson* involved a prosecution under the Municipality of Anchorage's implied consent ordinance, and the holding in *Patterson* was based on the wording of that municipal ordinance.  But the wording of AS 28.35.031(a) is essentially the same.)

---

[1]    AS 28.35.032(f)-(g).

In this appeal, the defendant, Joseph E. Ladick, argues that the government is not allowed to prove the element of driving or operating merely by showing that the defendant drove or operated a motor vehicle at *some point* prior to the defendant's arrest. We agree.

However, Ladick also argues that a defendant's act of driving or operating a motor vehicle does not satisfy the *Patterson* requirement unless that act of driving or operating is close in time to the defendant's arrest. We disagree with this contention. Neither *Patterson* nor the underlying statute, AS 28.35.031(a), requires any specific temporal relationship between the defendant's act of driving or operating a motor vehicle and the defendant's arrest. Rather, *Patterson* and the statute require a *causal* relationship.

Under AS 28.35.031(a) — as construed in *Patterson* — a person becomes obligated to take a breath test if (1) they operate or drive a motor vehicle *and* (2) they are lawfully arrested for an offense "arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle ... under the influence".

For the reasons explained in this opinion, we interpret this language to mean that, when the State prosecutes a person for breath-test refusal, the State must prove that the defendant was the driver or operator of the motor vehicle during the act of driving or operating that gave rise to the defendant's arrest.

In Ladick's case, the jury found that the government met that burden. We therefore affirm Ladick's conviction for breath-test refusal.

*Underlying facts, and the litigation of Ladick's case*

Ladick was prosecuted for refusing to take a breath test after he was arrested for DUI. This case arose when State Trooper Kevin Blanchette found Ladick

sitting in his parked car, intoxicated, in a power line easement along the Parks Highway. According to the trooper, Ladick said that he had been there for about five minutes, and the trooper testified that the hood of Ladick's car was still warm to the touch.

Trooper Blanchette arrested Ladick for driving under the influence, and Ladick then declined to take a breath test. Accordingly, Ladick was charged with both DUI and breath-test refusal.

At trial, Ladick testified that he had driven to the power line easement three hours or more before the trooper arrived, and that he was sober at that time. According to Ladick, he started drinking beer shortly after he parked the car, and he spent the next hour or so walking through the woods and drinking a six-pack of beer. He then returned to his car and stayed by the vehicle until the trooper arrived (which, according to Ladick's account, was about two and a half hours later).

As we explained earlier, this Court's decision in *Patterson* holds that when a defendant is prosecuted for breath-test refusal, the government must prove to the jury that the defendant was driving or operating a motor vehicle. In other words, this is an essential element of the crime of breath-test refusal.

After this Court decided *Patterson*, the committee on Criminal Pattern Jury Instructions drafted an instruction on the elements of breath-test refusal. That pattern instruction informs the jury that one of the elements the government must prove is that "the defendant had been driving [or] operating a motor vehicle prior to the arrest".

This instruction was given at Ladick's trial, and it became a focal point of the defense attorney's argument.

Based on Ladick's testimony that he drove to the power line easement three to four hours before the state trooper arrived, Ladick's attorney argued to the jury that the State could not prove the "prior driving" element of the crime by relying on the fact that Ladick drove to the power line easement. The defense attorney argued that

Ladick's act of driving to the easement was temporally too remote from Ladick's arrest to qualify as an act of driving that was "prior to the arrest":

> *Defense Attorney*: Now to prove that the defendant committed this crime, the State must prove beyond a reasonable doubt ... [that] the defendant had been driving or operating a motor vehicle "prior to the arrest". [The prosecutor] says, "Well, [Mr. Ladick] admitted that."

> [But] you have to use some common sense. Everybody has been driving [at some point in] time. I was driving when I was 18. That's "prior" to today. But it's not significant. You have to use common sense. Was [the act of driving] "prior" to [his] being arrested? Not three hours before, [or] four hours before. So we'd say that [the government has] not satisfied that element.

Apparently prompted by the defense attorney's argument, the jury sent a note to the trial judge during their deliberations, asking the judge to define the phrase "prior to the arrest":

> Under the law, what is the definition of "prior to the arrest"?

> For example, is it anytime that day[?] Or when [Ladick] parked in the power line easement? Or when Trooper Blanchette arrived?

> When did this "incident" start?

When the trial judge discussed the jury's question with the parties, Ladick's attorney suggested that the judge should tell the jury that "prior to the arrest" meant "five minutes before Trooper Blanchette arrived" — because that was the State's theory as to when Ladick had arrived at the easement. The prosecutor disagreed. He took the

position that the concept of "driving prior to the arrest" meant "[the] driving related to this incident".

During the discussion that followed, the trial judge acknowledged that Ladick's case was factually different from the typical situation where a person is actively driving, gets pulled over by a police officer, is arrested, and then is asked to take a breath test. Here, the trooper did not see Ladick driving the vehicle. Because of this, the trial judge analogized Ladick's case to the situation where a motorist drives to a gas station or convenience store, and while the motorist is inside the store, a clerk or attendant contacts the police to report that the motorist is intoxicated:

> *The Court*: [If] you drive to the store, and the cop shows up at the store because the clerk thinks you're drunk, and you refuse [the breath test], then you were driving "prior to the arrest" even though you weren't driving at the time the officer showed up — which is kind of [the] situation [here].
>
> .  .  .
>
> So I would say that [the answer to the jury's question is] "when Mr. Ladick got in his car to go to the power line easement" — since that's the specific thing that led to him getting "pulled over".

The judge then gave the jury a written answer to their question: he told them that, in Ladick's case, "prior to the arrest" meant "when Mr. Ladick got in his car and drove to the power line easement."

After receiving this clarification, the jury found Ladick guilty of breath-test refusal, although they acquitted him of driving under the influence.

*Our interpretation of AS 28.35.031(a) and <u>Patterson</u>*

On appeal, Ladick argues that the trial judge answered the jury's question incorrectly. More specifically, Ladick contends that the trial judge's answer improperly prevented him from arguing to the jury that his act of driving to the power line easement was too "remote" in time from his arrest — so that the State could not rely on that act of driving to satisfy its burden under *Patterson* of proving that Ladick drove or operated a motor vehicle "prior to his arrest".

But the *Patterson* decision does not use the phrase "prior to the arrest". [2] That phrase was coined by the committee on Criminal Pattern Jury Instructions when they tried to incorporate the *Patterson* decision into the instruction on the elements of breath-test refusal.

In fact, *Patterson* does not define the relationship between the defendant's act of driving or operating a motor vehicle and the defendant's arrest, except by inference. That inference arises from the facts of *Patterson*.

The defendant in *Patterson* was initially charged with driving under the influence, driving with a revoked license, and breath-test refusal. These charges arose when a van containing Patterson and several other people backed out of a driveway and hit a passing car. All the occupants of the van (including Patterson) got out, and someone summoned the police.

Sometime later (the *Patterson* decision does not say how much later), a police officer arrived to investigate the accident. The officer was told by a witness that Patterson had gotten out of the driver's side of the van. But when the officer spoke to Patterson, Patterson claimed that his wife had been driving.

---

[2] The word "prior" occurs only once in *Patterson*; it is used in the phrase "prior to trial". 815 P.2d at 391.

After the officer interviewed other witnesses and conducted a brief inspection of the accident scene, the officer concluded that Patterson had been driving. Because Patterson appeared to be intoxicated, and because his license was revoked, Patterson was arrested for driving under the influence and driving with a revoked license. Following his arrest, Patterson refused to take a breath test, so he was also charged with breath-test refusal.[3]

But when the municipal prosecutor's office reviewed Patterson's case shortly before trial, they concluded that they would be unable to prove beyond a reasonable doubt that Patterson was driving the van at the time of the accident. The prosecutor's office therefore dismissed the DUI and revoked license charges, and the parties went to trial solely on the breath-test refusal charge.[4]

At trial, Patterson's attorney proposed an instruction informing the jury that, to establish the crime of breath-test refusal, the government was required to prove that Patterson had, in fact, been driving a motor vehicle — not just arrested on suspicion of driving a vehicle. The trial judge refused to give this proposed instruction. But on appeal, this Court held that the instruction should have been given:

> Patterson could be held criminally liable only for refusing to take a test as required under [the municipal "implied consent" ordinance]. [And] under the plain language of [that ordinance], ... the obligation to submit to a test ... arises only from the conduct of operating, driving, or being in actual physical control of a motor vehicle. Patterson's duty to submit to a breath test thus hinged on *whether he operated, drove, or was in actual physical control of his van*.

---

[3]   *Patterson*, 815 P.2d at 391.

[4]   *Id*. at 391-92.

*Patterson*, 815 P.2d at 393 (emphasis added).

We have italicized the concluding clause of this passage because, by framing the issue as whether Patterson "operated [or] drove ... his van", this Court appears to have been saying that it was the government's burden to show that Patterson had actually been driving or operating this motor vehicle *during the incident that was under investigation* — the incident that gave rise to Patterson's arrest.

This conclusion is bolstered by later passages of the *Patterson* decision — in particular, the portion of the opinion where this Court emphasized that a motorist's obligation to take a breath test is not triggered merely by the fact that the motorist has been lawfully arrested (*i.e.*, not triggered merely by probable cause to believe that the person had been driving or operating a motor vehicle); rather, the obligation to take the breath test is triggered by the fact that the motorist actually *was* driving or operating a motor vehicle during the incident giving rise to the defendant's arrest. *See Patterson*, 815 P.2d at 393-94.

This reading of the *Patterson* decision — *i.e.*, construing the implied consent statute to require proof that the defendant actually was driving or operating a motor vehicle during the incident that gave rise to the arrest — is corroborated by the provisions of AS 28.35.032, the statute that makes refusing a breath test a crime. AS 28.35.032 repeatedly refers to criminal charges or civil liability "arising out of an act alleged to have been committed ... while operating or driving a motor vehicle ... under the influence". For example, under AS 28.35.032(a), the police are to advise arrestees that their act of refusing a breath test may be used against them in any civil or criminal action "arising out of an act alleged to have been committed by the person while operating a motor vehicle ... under the influence".

This provision is obviously referring to civil or criminal actions arising out of the act of driving or operating *that led to the person's arrest in the present instance.*

It seems unlikely that the legislature meant that a person's refusal of a breath test on this current occasion could be used against them in civil or criminal actions arising from other past or future acts of driving under the influence.

For these reasons, we interpret *Patterson* to mean that, when the government prosecutes a defendant for breath-test refusal, the government must prove that the defendant drove or operated a motor vehicle during the incident or episode that led to the defendant's arrest.

This is not a temporal relationship; the defendant's arrest need not be contemporaneous with, or close in time to, the defendant's act of driving or operating a motor vehicle. For example, there will be times when the police are called to the scene of a rural traffic accident, or are summoned to the aid of a vehicle in a ditch, long after any act of driving is over.

Rather, *Patterson* requires proof of a causal connection between the defendant's arrest and the defendant's act of driving or operating. Under AS 28.-35.031(a), as construed in *Patterson*, a person's obligation to take a breath test arises from (1) their act of driving or operating a motor vehicle, and (2) their arrest for a crime arising out of that driving or operating, based on an allegation that the person was driving or operating the vehicle while under the influence. Thus, the State must prove that the defendant drove or operated a motor vehicle during the incident that gave rise to the arrest.

*Application of this law to Ladick's case*

The DUI charge against Ladick was based on two alleged acts of driving or operating: first, Ladick's act of driving his motor vehicle to the power line easement; and second, Ladick's act of remaining in control of the vehicle after he arrived. If there

was probable cause to believe that Ladick was under the influence when he performed either or both of these two acts, then these acts were sufficient to trigger Ladick's duty to take a breath test under AS 28.35.031(a).

As we have explained, there was conflicting testimony as to when Ladick drove to the power line easement — specifically, how long before the trooper's arrival this act of driving occurred. According to the State's evidence, Ladick arrived at the power line easement only a few minutes before the trooper contacted him. But Ladick testified that he drove to the easement three hours or more before the trooper arrived.

This became an issue at Ladick's trial because the jury instruction on the elements of breath-test refusal stated that the government was required to prove that Ladick had been driving or operating a motor vehicle "prior to the arrest". During the defense attorney's summation to the jury, he argued that if Ladick had indeed arrived at the power line easement hours before the trooper contacted him, then this act of driving was too remote in time to qualify as "prior to the arrest".

But as we have explained, *Patterson* does not require proof of a temporal relationship between the defendant's act of driving and the defendant's arrest. Instead, *Patterson* requires proof that the defendant drove or operated a motor vehicle during the incident or episode that gave rise to the defendant's arrest.

Here, Ladick's arrest arose from his act of driving to the power line easement. And at trial, Ladick conceded that he had driven his motor vehicle to the easement. Regardless of whether this act of driving ended a few minutes before the trooper arrived (as the State's evidence suggested) or three hours before the trooper arrived (as Ladick testified), this act of driving had the required connection to the criminal charge against Ladick. The defense attorney therefore had no right to ask the jury to ignore this act of driving (by arguing that this act of driving was not sufficiently contemporaneous with Ladick's arrest).

To the extent that the wording of the pattern jury instruction on the elements of breath-test refusal suggests that there is a temporal component to *Patterson*, and that Ladick could validly ask the jury to acquit him based solely on the ground that his act of driving was not sufficiently contemporaneous with his arrest, we disapprove that portion of the pattern jury instruction.

Thus, when Ladick's jury asked the trial judge to clarify the meaning of "prior to arrest" the judge should have simply told the jurors that the government had to prove that Ladick drove or operated a motor vehicle during the incident or episode that gave rise to his arrest. Instead, the trial judge told the jurors that the relevant act of driving was "when Mr. Ladick got in his car and drove to the power line easement".

Normally, a judge should not instruct the jury using words which suggest that the judge has reached a conclusion on issues of fact — issues such as whether the defendant engaged in an act of driving. But here, Ladick expressly conceded (in his trial testimony) that he drove his vehicle to the power line easement. Thus, even though the judge's answer to the jury might be read as assuming the truth of this fact, there was no error.

*Conclusion*

The judgement of the superior court is AFFIRMED.